EDWARD COLLINS ET AL. *v.* ANTHEM
HEALTH PLANS, INC.
(SC 16900)

Borden, Norcott, Katz, Palmer and Zarella, Js.

14

Argued April 22—officially released September 30, 2003

*Craig A. Hoover,* pro hac vice, with whom were *Michael G. Durham* and *Peter R. Bisio,* pro hac vice, for the appellant-appellee (defendant).

*William F. Gallagher*, with whom were *William J. Sweeney, Matthew Shafner* and, on the brief, *Hugh D. Hughes*, for the appellees-appellants (named plaintiff et al.).

*Linda L. Morkan, Bradford S. Babbitt, Brian Boyle*, pro hac vice, *Pamela Harris*, pro hac vice, and *Marc E. Isserles*, pro hac vice, filed a brief for the Connecticut Association of Health Plans et al. as amici curiae.

*Richard Blumenthal*, attorney general, and *Charles C. Hulin* and *Arnold I. Menchel*, assistant attorneys general, filed a brief for the office of the attorney general as amicus curiae.

*Opinion*

BORDEN, J. The defendant, Anthem Health Plans, Inc., appeals[1] and the plaintiffs, Edward Collins, a physician, and numerous other named physicians and groups of physicians,[2] cross appeal from the order of the trial court granting in part, and denying in part, the plaintiffs' motion for class certification[3] of this action, which

---

[1] The defendant appealed and the plaintiffs cross appealed from the judgment of the trial court to the Appellate Court, and we transferred the case to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The plaintiffs named in the second amended complaint were: Edward Collins; Michael Connair; Scott Gray; Ronald Ripps; John O'Brien; Joseph Zeppieri; Kristaps J. Keggi; John M. Keggi; Connecticut Family Orthopedics, P.C.; Hartford Orthopedic Surgeons, P.C.; Connecticut Sports Medicine & Orthopaedic Center, P.C.; and Orthopaedic Surgery, P.C.

[3] Class certification is a procedural mechanism enabling representative parties to litigate on behalf of a class of unnamed persons, who are not joined in the action. "Although representative suits have been recognized in various forms since the earliest days of English law, see generally S. Yeazell, From Medieval Group Litigation to the Modern Class Action (1987); see also Marcin, Searching for the Origin of the Class Action, 23 Cath. U. L. Rev. 515, 517–524 (1973), class actions as we recognize them today developed as an exception to the formal rigidity of the necessary parties rule in equity, see Hazard, Gedid, & Sowle, An Historical Analysis of the Binding Effect of Class Suits, 146 U. Pa. L. Rev. 1849, 1859–1860 (1998) . . . as well as from the bill of peace, an equitable device for combining multiple suits, see Z. Chafee, Some Problems of Equity 161–167, 200–203 (1950).

sounds in breach of contract, tortious interference with business expectations, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[4] The plaintiffs are several orthopedic surgeons and groups of orthopedic surgeons employed in this state, who brought this action to challenge, among other things, the defendant's alleged failure to pay adequately for medical procedures under the terms of certain written agreements between the parties. On appeal, the defendant claims that the trial court abused its discretion in granting, in part, the plaintiffs' motion for class certification because: (1) the plaintiffs had failed to establish the elements of commonality and typicality, as required to bring a class action under

---

The necessary parties rule in equity mandated that 'all persons materially interested, either as plaintiffs or defendants in the subject matter of the bill ought to be made parties to the suit, however numerous they may be.' *West* v. *Randall*, 29 F. Cas. 718, 721 (No. 17,424) (CC RI) (1820) (Story, J.). But because that rule would at times unfairly deny recovery to the party before the court, equity developed exceptions, among them one to cover situations 'where the parties are very numerous, and the court perceives, that it will be almost impossible to bring them all before the court; or where the question is of general interest, and a few may sue for the benefit of the whole; or where the parties form a part of a voluntary association for public or private purposes, and may be fairly supposed to represent the rights and interests of the whole . . . .' Id., at 722; see J. Story, Commentaries on Equity Pleadings § 97 (J. Gould 10th rev. ed. 1892); F. Calvert, A Treatise upon the Law Respecting Parties to Suits in Equity 17–29 (1837) . . . ." *Ortiz* v. *Fibreboard Corp.*, 527 U.S. 815, 832–33, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999).

The rules permitting the institution and maintenance of a class action in Connecticut are General Statutes § 52-105 and Practice Book §§ 9-7 and 9-8. General Statutes § 52-105 provides: "When the persons who might be made parties are very numerous, so that it would be impracticable or unreasonably expensive to make them all parties, one or more may sue or be sued or may be authorized by the court to defend for the benefit of all." See footnotes 5 and 6 of this opinion for the text of Practice Book §§ 9-7 and 9-8, respectively.

[4] The plaintiffs' original complaint also contained counts sounding in conversion and violation of the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq. The trial court granted the defendant's motion to strike those counts. Those counts are not a subject of this appeal.

Practice Book § 9-7 (2) and (3);[5] (2) the trial court failed to consider whether questions of law or fact common to the members of the certified class predominated over questions affecting only individual members, as required to maintain a class action under Practice Book § 9-8;[6] (3) the plaintiffs could not fairly and adequately represent the certified class, as required to bring a class action under Practice Book § 9-7 (4); and (4) a class action was not superior to other available methods for the fair and efficient adjudication of the controversy, which is required to maintain a class action under Practice Book § 9-8.[7] The plaintiffs have moved to dismiss the defendant's appeal "insofar as [it] purports to raise nonCUTPA issues," on the basis that General Statutes § 42-110h[8] only provides for the interlocutory appeal of class certification orders entered in CUTPA actions.[9] We deny the plaintiffs' motion to dismiss that aspect of the appeal. On the merits of the appeal, we agree

---

[5] Practice Book § 9-7 provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

[6] Practice Book § 9-8 provides: "An action may be maintained as a class action if the prerequisites of Section 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

[7] Class actions are also expressly authorized by General Statutes § 52-105. See footnote 3 of this opinion for the text of § 52-105.

[8] General Statutes § 42-110h provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this section may be conditional, and it may be amended before decision on the merits. *An order issued under this section shall be immediately appealable by either party.*" (Emphasis added.)

[9] The right of appeal is purely statutory and our statutes generally limit the right of appeal "to appeals by aggrieved parties from *final judgments.*" (Emphasis added.) *State* v. *Curcio,* 191 Conn. 27, 30, 463 A.2d 566 (1983).

with the defendant's second claim, and, accordingly, we reverse the trial court's order granting the plaintiffs' motion for class certification, and we remand the case to the trial court for further proceedings. We proceed, nonetheless, to consider the remaining issues raised in the defendant's appeal, and in the plaintiffs' cross appeal, because the issues will arise again on remand. We disagree with the defendant's remaining claims in the appeal.

On the cross appeal, the plaintiffs claim that the trial court improperly: (1) refused to rule on the merits of the motion for class certification with respect to their claim that the defendant unlawfully altered the payment terms[10] of the agreements at issue; (2) denied their subsequent motion to amend the class certification to encompass that claim; and (3) denied their motion for class certification with respect to their allegation that the defendant had engaged in "illegal profiling" of their utilization of medical resources, leading to their potential termination from participation in the agreements. We disagree with the plaintiffs' first two claims, but we agree with the third claim.

The following facts and procedural history are undisputed. The plaintiffs are several orthopedic surgeons and groups of orthopedic surgeons, who brought this class action in 1999, alleging breach of contract, tortious interference with business expectations, and violation of CUTPA. See footnote 2 of this opinion. In support of those counts, the plaintiffs alleged that they had each entered a written agreement with the defendant for the provision of certain medical services to persons insured by the defendant, and that the defendant had breached the terms of those agreements in several ways. Specifi-

---

[10] Specifically, the plaintiffs had argued, in a hearing before the trial court, that the defendant unilaterally modified the payment terms by adopting the resource based relative value scale as promulgated by the United States government to limit permissible fees for medicare recipients.

cally, the plaintiffs alleged that the defendant: (1) failed to pay adequately for the plaintiffs' medical services in a timely manner; (2) failed to develop and communicate consistent policies and procedures for the coverage of the plaintiffs' medical services; (3) engaged in unlawful "profiling and other discriminatory practices" designed to prevent payment for services; (4) arbitrarily amended the agreements without providing adequate notice or an adequate procedure for the plaintiffs to challenge those amendments; (5) failed "to provide senior personnel to work with the [p]laintiffs"; and (6) shifted costs to the plaintiffs that properly were to be borne by the defendant.

In March, 2001, the plaintiffs moved for class certification to serve as representative parties for the following class of unnamed persons: " '[A]ll those providers, doctors and physicians who have signed with the defendant [one of several written agreements to provide medical services to persons insured by the defendant].' " At a hearing on the motion, the plaintiffs further limited the proposed class to "include only physicians, not social workers or other providers who are not medical doctors," "who signed such agreements from 1993 to the present."[11]

In July, 2001, the trial court granted the motion for class certification, but only with respect to three of the sixteen subparagraphs of the plaintiffs' complaint asserting factual allegations in support of the counts of the complaint. Because the same factual allegations served as the basis for each count of the plaintiffs' complaint, the court's ruling applied to each count. The court denied the plaintiffs' motion for class certification, however, with respect to the remaining thirteen

[11] The plaintiffs further limited the proposed class with other specific exceptions in their brief in support of their motion for class certification. Those specific limitations are not relevant to this appeal.

subparagraphs of the complaint, thereby creating a "partial class action."[12] 7B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure (2d Ed. 1986) § 1790, p. 268. The court determined that several of those thirteen subparagraphs contained allegations that, based on current deposition testimony, none of the plaintiffs sought to establish on their own behalf. On the basis of that conclusion, the court determined that the plaintiffs could not represent the proposed class with respect to those allegations because the plaintiffs' claims were not typical of the claims raised for the class, as required under Practice Book § 9-7 (3). The court determined that other factual allegations in the complaint did not raise issues common to those of the class and that the claims supported by those allegations were not typical of the claims of the class because, as discovery thus far had demonstrated, the plaintiffs' proof would be "highly individualized across the proposed class," requiring "case-by-case" adjudication. More specifically, the court concluded that those allegations "relate[d] to discrete transactions concerning particular services in particular circumstances, with factual issues not common to other such transactions . . . ." By contrast, the court determined that the three subparagraphs of factual allegations in the complaint for which it had granted class certification described "general practices" constituting a "uniform method of doing business . . . ." Thus, the court concluded, the issues raised in those allegations were common to the class and the claims supported by those allegations were typical of the claims of the class.

---

[12] A partial class action is a class action brought or maintained only "with respect to particular issues . . . ." 7B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure (2d Ed. 1986) § 1790, p. 268, citing Fed. R. Civ. P. 23 (c) (4). Although rule 23 (c) (4) of the Federal Rules of Civil Procedure expressly authorizes this class action device, our current rules of practice do not contain a comparable, express provision. We set forth a rule recognizing the partial class action in part I of this opinion.

Having concluded that the elements of commonality and typicality, as required for class certification under Practice Book § 9-7 (2) and (3), were satisfied with respect to three subparagraphs of factual allegations in the complaint, the court proceeded to consider other requirements for class certification, which are described in Practice Book §§ 9-7 and 9-8. The court determined that the numerosity requirement of Practice Book § 9-7 (1), namely, that "the class [be] so numerous that joinder of all members is impracticable," was satisfied because the plaintiffs had set forth evidence that thousands of physicians in Connecticut had entered into similar agreements with the defendant, and nothing "suggest[ed] that the defendant treats various groups of physicians differently with regard to the policies and practices at issue" in the three subparagraphs of the complaint in question. The court also determined that " 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy,' " as required to maintain a class action under Practice Book § 9-8. The court reasoned that a series of individual trials by all members of the class might not be feasible because the "monetary effect on a physician's practice may be too small" to provide an adequate incentive. The court further reasoned that "[p]ursuit of these claims in a class action will avoid duplicative lawsuits, multiple adjudications requiring additional judicial resources and the prospect of inconsistent judicial decisions as to injunctive relief, and greater expense to the defendant from defending multiple suits presenting the same claims." The court made no finding, however, as to whether "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," which is also required for class certification under Practice Book § 9-8.

This appeal and cross appeal from the trial court's class certification order followed. Further facts and procedural history will be set forth where necessary.

Before turning to the claims raised in this appeal and cross appeal, we set forth our standard of review for orders granting and denying class certification. "Although a trial court must undertake a rigorous analysis to determine whether the plaintiff[s] [have] borne [the] burden successfully . . . it has broad discretion in determining whether a suit should proceed as a class action. . . . Our review is confined to determining whether the trial court abused its discretion." (Internal quotation marks omitted.) *Marr* v. *WMX Technologies, Inc.*, 244 Conn. 676, 680, 711 A.2d 700 (1998); see also *Moore* v. *PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). In reviewing a decision of the trial court for abuse of discretion, "every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *O'Neil*, 261 Conn. 49, 81, 801 A.2d 730 (2002). "Judicial discretion [however] . . . is always legal discretion, exercised according to the recognized principles of equity. . . . While its exercise will not ordinarily be interfered with on appeal to this court, reversal is required where the abuse is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, 262 Conn. 730, 742–43, 818 A.2d 731 (2003). Furthermore, our deference to the discretion of the trial court "presupposes that the trial court did in fact exercise its discretion. . . . [S]ee *State* v. *Lee*, 229 Conn. 60, 73–74, 640 A.2d 553 (1994) ([i]n the discretionary realm, it is improper for the trial court to fail to exercise its discretion)." (Citation omitted; internal quotation marks omitted.) *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 35–36, 730 A.2d 1128 (1999). The United States Court of Appeals for the Second Circuit has exercised "even

greater deference" when reviewing a District Court's decision to certify a class than when reviewing a decision declining to do so. *Marisol A.* v. *Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997); see also *Moore* v. *PaineWebber, Inc.*, supra, 1252. We will follow that approach.

"[I]n determining whether to certify the class, a [trial] court is bound to take the substantive allegations of the complaint as true." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 743. "[T]he interpretation of pleadings is always a question of law for the court . . . . *Cahill* v. *Board of Education*, 198 Conn. 229, 236, 502 A.2d 410 (1985). The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . *Beaudoin* v. *Town Oil Co.*, 207 Conn. 575, 587–88, 542 A.2d 1124 (1988), and cases cited therein. Although essential allegations may not be supplied by conjecture or remote implication; *Cahill* v. *Board of Education*, supra, 236; the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. *Price* v. *Bouteiller*, 79 Conn. 255, 257, 64 A. 227 (1906)." (Internal quotation marks omitted.) *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 795, 807 A.2d 467 (2002); see also *Doe* v. *Yale University*, 252 Conn. 641, 667, 748 A.2d 834 (2000) ("pleadings must be construed broadly and realistically, rather than narrowly and technically" [internal quotation marks omitted]). "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. . . . [S]ometimes, it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question. . . . *General Telephone Co. of the Southwest* v. *Falcon*, [457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)]. In determin-

ing the propriety of a class action, [however] the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [the class action rules] are met. . . . *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974). . . . [D]oubts regarding the propriety of class certification should be resolved *in favor* of certification." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, supra, 743. With these principles in mind, we turn to the claims presented in the appeal.

## I

## PARTIAL CLASS ACTION

As a threshold matter, we note that, by restricting class certification to particular issues raised in three subparagraphs of the plaintiffs' complaint, the trial court created a "partial class action." 7B C. Wright, A. Miller & M. Kane, supra, § 1790, p. 268. Rule 23 (c) (4) of the Federal Rules of Civil Procedure expressly authorizes a partial class action, whereby an action is only "brought or maintained as a class action with respect to particular issues . . . ." Neither party has raised or briefed the issue of whether we should recognize the partial class action mechanism in Connecticut. Although our rules of practice neither expressly prohibit nor permit such a mechanism, we interpret them to permit the partial class action mechanism.

The same principles of judicial economy advanced by class actions generally are further advanced by partial class actions. "[C]lass actions serve a unique function in vindicating plaintiffs' rights. [C]lass action procedures . . . increase efficiencies in civil litigation by encouraging multiple plaintiffs to join in one lawsuit. Many jurisdictions have recognized that in certain situations, class action suits are superior to individual law-

suits. . . . Connecticut's class action procedures . . . are designed to prevent the proliferation of lawsuits, and duplicative efforts and expenses. . . . Accordingly, we have noted that class actions serve four essential and distinct functions, specifically, to: (1) promote judicial economy and efficiency; (2) protect defendants from inconsistent obligations; (3) protect the interests of absentee parties; and (4) provide access to judicial relief for small claimants." (Citations omitted; internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center,* supra, 262 Conn. 735. As noted in a leading treatise, the partial class action device was created to foster the same principles: "[T]he advantages and economies of adjudicating issues that are common to the entire class on a representative basis should be secured even though other issues in the case may have to be litigated separately by each class member. Accordingly, even if only one common issue can be identified as appropriate for class action treatment, that is enough to justify the application of the provision as long as the other [class certification] requirements have been met." 7B C. Wright, A. Miller & M. Kane, supra, § 1790, p. 271; see also *Robinson* v. *Metro-North Commuter R. Co.,* 267 F.3d 147, 167 (2d Cir. 2001) (courts should "take full advantage of [the partial certification] provision to certify separate issues in order . . . to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies" [internal quotation marks omitted]).

Accordingly, we permit the partial class action device. A class action may be brought or maintained with respect to particular issues, provided that the requirements for class certification are satisfied. Cf. *State Farm Mutual Automobile Ins. Co.* v. *Mabry,* 274 Ga. 498, 499, 556 S.E.2d 114 (2001) (enabling partial class action to proceed, with respect to certain counts of complaint, and not others, in absence of express

state provision comparable to rule 23 [c] [4] of Federal Rules of Civil Procedure, because "appellate courts of Georgia have relied on the federal rules when construing [Georgia's class action] statute").

We also adopt the proviso, set forth in rule 23 (c) (4) of the Federal Rules of Civil Procedure, that, in considering the propriety of certifying a partial class action, the remaining rules governing class certification must be "construed and applied accordingly." For example, the requirement of Practice Book § 9-7 (3) that "the claims . . . of representative parties [be] typical of the claims . . . of the class" must be read to refer only to the claims for which the court has granted class certification, rather than all of the claims brought by the representative plaintiffs. The typicality requirement, as with most of the requirements for class certification, concerns whether "the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of the Southwest* v. *Falcon*, supra, 457 U.S. 157 n.13; id. (requirements of commonality, typicality and adequacy of representation "serve as guideposts" for that basic assessment). Generally, the class action requirements are designed to balance the economic benefits of proceeding with a class action, discussed previously, against any procedural unfairness, which might result from class certification. *Amchem Products, Inc.* v. *Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). In a partial class action, the binding effect of the judgment on absent class members is limited to the particular claims for which class certification was granted. See generally 7B C. Wright, A. Miller & M. Kane, supra, §§ 1789 through 1790. As a result, the concern for adequate representation is limited to those certified claims for which there is such representative litigation, and the applicability of the rules should be similarly limited.

We discuss the implications of this caveat further, in the context of each individual requirement for class certification, later in this opinion.

## II

## THE MOTION TO DISMISS THE APPEAL IN PART

Next, we address the plaintiffs' motion to dismiss the defendant's appeal "insofar as [it] purports to raise nonCUTPA issues." The plaintiffs filed that motion while the case was pending before the Appellate Court. The Appellate Court denied the motion without prejudice, pending argument on the merits, and instructed the parties to address the issue in their briefs. We then transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. In its brief, the defendant claims that we should review the trial court's class certification order with respect to each of the counts of the plaintiffs' complaint, rather than restrict our review to the counts brought under CUTPA. Specifically, the defendant argues that, although § 42-110h only provides for the interlocutory appeal of class certification orders as they affect counts brought under CUTPA; see footnote 8 of this opinion for the text of § 42-110h; because the CUTPA and non-CUTPA counts are "inextricably intertwined"; *Taff* v. *Bettcher*, 243 Conn. 380, 384 n.2, 703 A.2d 759 (1997); the certification order as to the nonCUTPA counts also constitutes a final judgment for purposes of appeal. Conversely, the plaintiffs argue that we should restrict the scope of our review of the trial court's class certification order to the counts brought under CUTPA. For the reasons that follow, we dismiss as moot the plaintiffs' motion to dismiss the appeal as to the non-CUTPA counts.

"It is settled law that the right to appeal is purely statutory and is allowed only if the conditions fixed by statute are met." (Internal quotation marks omitted.)

*Windham Taxpayers Assn.* v. *Board of Selectmen*, 234 Conn. 513, 522, 662 A.2d 1281 (1995). Section 42-110h provides that an order granting class certification for an action brought under CUTPA "shall be immediately appealable by either party." Consequently, there is no question about the appealability of the CUTPA counts, because of the terms of § 42-110h. Because that statutory provision does not, at least by its terms, apply to the nonCUTPA counts, the question of whether the class certification order as to those counts is appealable is less straightforward. Furthermore, neither party contends that such an order meets the two part test of appealability set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). Compare *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 734 (trial court's class *decertification* order final judgment under *Curcio*). We need not decide that thorny question, however, because we conclude that where both the factual and legal issues raised by the class certification order as to both the CUTPA and nonCUTPA counts are inextricably intertwined with each other, our decision on the CUTPA counts will, as a matter of law, necessarily control the certification issues on the other counts as well.[13] Thus, we regard as moot the motion to dismiss the appeal as to the nonCUTPA counts because it would serve no useful purpose to rule on it. See *Ayala* v. *Smith*, 236 Conn. 89, 93, 671 A.2d 345 (1996) ("[i]t is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting

---

[13] We note that in at least one other case brought, in part, under CUTPA; *Walsh* v. *National Safety Associates, Inc.*, 241 Conn. 278, 694 A.2d 795 (1997); we assumed jurisdiction over nonCUTPA claims on an interlocutory appeal from a class certification order, albeit without noting the jurisdictional question raised in the present appeal by the plaintiffs. In that case, however, the jurisdictional claim was not presented to us, and we did not consider it.

of actual relief or from the determination of which no practical relief can follow" [internal quotation marks omitted]).

As the defendant correctly contends, and the facts of the present case indicate, the nonCUTPA counts are "inextricably intertwined" with the CUTPA claims. *Taff* v. *Bettcher*, supra, 243 Conn. 384 n.2. As discussed previously, the trial court granted class certification with respect to three subparagraphs of the plaintiffs' complaint that contained factual allegations supporting *each count of the complaint*; and the certification order did not differentiate among, or even address, the individual counts of the complaint. Therefore, in a realistic, if not a formal, sense, our analysis of the court's class certification order would apply to all counts of the complaint, because each count depends upon the same factual issues certified for class representation in the court's order. Any restriction of our review of this class certification order with respect to the CUTPA count would, therefore, be purely hypothetical. Consequently, we conclude that where, as here, the factual and legal bases of the class certification issues do not differ among the CUTPA and nonCUTPA claims, and where they are, therefore, inextricably intertwined with each other, our conclusions regarding the class certification of the CUTPA counts will, as a matter of law, govern the class certification of the nonCUTPA counts as well.

III

THE DEFENDANT'S APPEAL

Next, we address the defendant's claim that the trial court abused its discretion by determining that the plaintiffs had established the elements of commonality and typicality, as required to bring a class action under Practice Book § 9-7 (2) and (3), with respect to each of the three subparagraphs of the plaintiff's complaint for which the trial court granted class certification. In

support of this claim, the defendant asserts that commonality and typicality were not demonstrated because: (1) "the allegations require individualized inquiries that are not susceptible to class proof"; and (2) "the . . . plaintiffs did not suffer from the [harms] alleged." The defendant also contends, with respect to all three subparagraphs of the complaint, that the trial court improperly shifted the burden of establishing commonality and typicality away from the plaintiffs, requiring the defendant to disprove that those elements were established. With respect to the first of the three subparagraphs at issue, namely, paragraph 20 (b), the defendant further claims that the trial court improperly ignored conflicts between the plaintiffs and the certified class. We disagree with each of the defendant's arguments.

The following additional undisputed facts and procedural history are relevant to our resolution of this claim. The trial court granted class certification with respect to three subparagraphs of factual allegations in the plaintiffs' complaint, namely, paragraph 20 (b), (g) and (m). In those subparagraphs, the plaintiff alleged the following: "20. . . . [The defendant has] unilaterally breached the terms of the [a]greements in one or more of the following respects . . . (b) Failing to provide the [p]laintiff and other similarly situated physicians with a consistent medical utilization/quality management and administration of covered services by paying financial incentive and performance bonuses to providers and [the defendant's] staff members involved in making utilization management decisions. . . . (g) Failing to maintain accurate books and records whereby improper payments to the [p]laintiffs were made based on claim codes submitted. . . . (m) By failing to provide senior personnel to work with the [p]laintiffs or other similarly situated physicians . . . ."

The trial court determined that, in those three subparagraphs of the complaint, the plaintiffs had alleged

"general practices" of the defendant, and "uniform method[s] of doing business" that breached the agreements it had entered with the plaintiffs and all of the members of the putative class, supporting all four counts of the plaintiffs' complaint. On that basis, the court concluded that the requirements of commonality and typicality had been satisfied with respect to those subparagraphs because the entire class, namely, all physicians who had entered one of the relevant agreements with the defendant, would have experienced breaches of contract from those general practices or uniform methods.

Next, we set forth the specific rules of class certification at issue in this claim. At the outset, we note that our jurisprudence governing class certification is relatively undeveloped, because "most class actions are brought in federal court. Our class action requirements, however, are similar to those applied in the federal courts. Compare Practice Book §§ 9-7 and 9-8 [see footnotes 5 and 6 of this opinion] with Fed. R. Civ. P. 23 (a) and (b).[14] Both sets of rules require

[14] Rule 23 of the Federal Rules of Civil Procedure provides in relevant part: "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds

that at least[15] four elements be satisfied to certify a class: (1) numerosity—that the class is too numerous to make joinder of all members feasible; (2) commonality—that the members have similar claims of law and fact; (3) typicality—that the named plaintiffs' claims are typical of the claims of the class; and (4) adequacy of representation—that the interests of the class are protected adequately. See Practice Book § 9-7; Fed. R. Civ. P. 23 (a). Thus, we look to federal case law for guidance in construing our class certification requirements." *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 737–38. The United States Supreme Court has explained that the two requirements at issue in this claim—commonality and typicality—"tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff[s'] claim [for which the court has granted class certification][16] and the class claims are so interrelated that the interests of the class members

generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. . . ."

[15] Practice Book § 9-8 imposes further requirements to maintain a class action that are also at issue in this appeal. See part III D and F of this opinion.

[16] As explained in part I of this opinion, the present case is a *partial* class action. Accordingly, we construe the requirement that the representative plaintiffs' "claims" be typical and present common issues to refer strictly to the claims for which the court has granted class certification. See part I of this opinion.

will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises [other] concerns . . . ." *General Telephone Co. of the Southwest* v. *Falcon*, supra, 457 U.S. 157 n.13. "These requirements effectively limit the class claims to those fairly encompassed by the named plaintiff[s'] claims." (Internal quotation marks omitted.) Id., 156.

As the United States Court of Appeals for the Second Circuit[17] has stated, "[t]he commonality requirement is met if [the] plaintiffs' grievances share a common question of law or of fact. . . . Typicality, by contrast, requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." (Citations omitted; internal quotation marks omitted.) *Marisol A.* v. *Giuliani*, supra, 126 F.3d 376. The typicality "criterion does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." (Internal quotation marks omitted.) *Caridad* v. *Metro-North Commuter R.*, 191 F.3d 283, 293 (2d Cir. 1999), cert. denied, 529 U.S. 1107, 120 S. Ct. 1959, 146 L. Ed. 2d 791 (2000).

Finally, we emphasize that, in the context of a *partial* class action, such as the present case, the typicality requirement does not require that *all* of the claims brought by representative plaintiffs be typical of the

---

[17] "Decisions of the Second Circuit Court of Appeals, although not binding on us, are particularly persuasive." *Turner* v. *Frowein*, 253 Conn. 312, 341, 752 A.2d 955 (2000).

claims of the represented class members; rather, the typicality inquiry is limited to those claims for which the trial court granted certification. See part I of this opinion. By focusing exclusively on the three subparagraphs of the plaintiffs' complaint for which the trial court granted certification, both of the parties concede this point of law.

The trial court did not abuse its discretion in determining that the elements of commonality and typicality were satisfied with respect to each of the three subparagraphs of factual allegations at issue. When viewed liberally and realistically; see *Doe* v. *Yale University*, supra, 252 Conn. 667; each of the three subparagraphs of the complaint implicates issues of law and fact common to the class certified by the trial court. Additionally, the plaintiffs' claims under those subparagraphs are typical of claims advanced on behalf of the class.

## A

### Paragraph 20 (b) of the Plaintiffs' Complaint

In paragraph 20 (b) of the complaint, the plaintiffs allege that "by paying financial incentive and performance bonuses to [personnel] involved in making utilization management decisions" the defendant has breached its contractual obligation under certain agreements to provide "consistent medical utilization/ quality management and administration of covered services . . . ." Read liberally and realistically, this paragraph alleges that the defendant had a contractual obligation to all physicians who had entered one of the relevant agreements—each member of the class—to ensure a consistent standard for authorizing or denying coverage for medical services, and that an incentive bonus program implemented by the defendant had breached that obligation. Thus, the trial court did not abuse its discretion by determining that common fac-

tual and legal issues related to whether the alleged incentive program constituted a breach of a common provision in the agreements existed, satisfying the commonality requirement of Practice Book § 9-7 (2). Furthermore, because each class member would allege the same breach of that common provision of the agreements, the class members would make "similar legal arguments to prove the defendant's liability"; (internal quotation marks omitted) *Marisol A.* v. *Giuliani*, supra, 126 F.3d 376; satisfying the typicality requirement of Practice Book § 9-7 (3).

As mentioned previously in this opinion, the defendant makes four specific counterarguments. Each of these arguments is unpersuasive. First, the defendant contends that commonality and typicality were absent because the allegations in paragraph 20 (b) of the complaint involve individualized inquiries that are not susceptible to class-wide proof. Specifically, the defendant contends that paragraph 20 (b) requires a case-by-case inquiry into whether each particular course of treatment was " 'medically necessary,' " which would vary from plaintiff to plaintiff. No such inquiry into whether particular courses of treatment were "medically necessary" is required, however, to establish liability for breach of contract according to the allegations contained in paragraph 20 (b). That subparagraph alleges only that an incentive program developed by the defendant created *inconsistent standards* of coverage, which breached a common term of the agreements with each class member. An inquiry into the amount of coverage that would have been medically necessary for any given course of treatment would be required, if at all, only to assess the appropriate level of damages for a given plaintiff. "That there may be individual consideration of the issue of damages has never been held to bar certification of a class." *Marr* v. *WMX Technologies, Inc.*, 244 Conn. 676, 682, 711 A.2d 700 (1998).

Second, the defendant maintains that paragraph 20 (b) of the complaint does not satisfy the commonality and typicality requirements because there was no evidence that any of the plaintiffs had been "injured" by the alleged breach of contract. An examination of the specific argument made here by the defendant reveals that, by the term "injured," the defendant is again referring to issues of damages, rather than liability for breach of contract itself, which is an inadequate basis to challenge the propriety of class certification. The defendant contends that several of the plaintiffs stated, in deposition testimony, that they could not identify specific instances where individual claims had been denied as a result of the alleged inconsistent standards of coverage. Again, paragraph 20 (b) alleges that the inconsistent standards of coverage themselves breached the agreements with the plaintiffs. Evidence of specific instances where individual claims were denied *as a result* of those alleged inconsistent standards, decreasing the fees earned by each plaintiff, would be required, if at all, only to establish the amount of damages to which the individual plaintiffs are entitled. Again, all that is required to establish commonality and typicality with respect to the claim alleged in paragraph 20 (b) is the breach of contract itself, not the amount of damages. "No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." (Internal quotation marks omitted.) Id.

Third, the defendant maintains that the court improperly "shifted . . . the burden" to the defendant to establish commonality and typicality with respect to

paragraph 20 (b) of the complaint. Specifically, the defendant contends that the court improperly "assumed that the allegation in [paragraph 20 (b)] challenged 'general practices and policies' " without requiring adequate evidentiary support. "[I]n determining whether to certify the class, a [trial] court is bound to take the substantive allegations of the complaint as true." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 743. A trial court does not improperly "[shift] . . . the burden" of establishing the class action requirements by accepting the substantive allegations of the complaint as true. As discussed previously in this opinion, paragraph 20 (b) of the plaintiffs' complaint alleges a general business practice of the defendant, namely, an incentive program that breached its general duty to all class members to ensure a consistent standard for authorizing or denying coverage of medical services. Whether, ultimately, the plaintiffs' allegation that this general policy existed will be supported by the evidence presented is a question on the merits of the plaintiffs' case. "In determining the propriety of a class action . . . the question is not whether the plaintiff or plaintiffs . . . will prevail on the merits, but rather whether the requirements of [the class action rules] are met." (Internal quotation marks omitted.) Id. Although, as we noted in *Rivera*, "[s]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," paragraph 20 (b) of the complaint does not present such an issue. (Internal quotation marks omitted.) Id.; *General Telephone Co. of the Southwest* v. *Falcon*, supra, 457 U.S. 160.[18]

---

[18] The defendant alludes to the same United States Supreme Court case, *General Telephone Co. of the Southwest* v. *Falcon*, supra, 457 U.S. 147, in an effort to *support* its argument that evidence is required to establish the propriety of class certification based on an allegation of general business practices. *Falcon* does not support the defendant's argument. Allegations of general business practices made by the plaintiff in *Falcon* were insufficient to establish the propriety of class certification, but not for lack of evidentiary support. Id., 159. In *Falcon,* the plaintiff had alleged an instance of racial

Finally, the defendant insists that the trial court abused its discretion by granting class certification with respect to paragraph 20 (b) of the complaint because it ignored a potential conflict of interest between a subset of the class—namely, certain primary care physicians who allegedly received the incentives complained of in paragraph 20 (b)—and the remainder of the class.[19] The defendant derives this conflict from paragraph 20 (b) itself, which alleges that the defendant had paid the improper incentive bonuses to certain "providers," in addition to the defendant's own "staff members . . . ." The defendant argues that some of those "providers" may have been primary care physicians among the certified class who were paid such incentives for their services as "gatekeepers," authorizing or denying referrals for specialized care. Thus, the defendant concludes that a conflict exists because one group within the certified class may have *benefited* from the incentives complained of in paragraph 20 (b), whereas the plaintiffs, and the remainder of the class, are alleged only to have *suffered a loss* from the breach of contract caused by those incentives. At the outset, we note that, under our

discrimination and had relied on the untenable proposition that any "racial discrimination is by definition class discrimination" to further allege a general business practice. Id., 157. Thus, the allegations themselves, taken as true, were insufficient to support class certification in *Falcon.* Id., 159.

[19] We note that the United States Supreme Court has implied, in dicta, that conflicts of interest between class members implicate the adequacy of representation requirement, rather than the requirements of commonality and typicality. See *General Telephone Co. of the Southwest* v. *Falcon,* supra, 457 U.S. 157 n.13; id., 157–58 n.13 (commonality and typicality requirements "tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about . . . conflicts of interest"). We need not resolve the question of whether the defendant's claim regarding a conflict of interest also implicates the elements of commonality and typicality, however, because the defendant has also challenged the trial court's class certification order based on the adequacy of representation criterion; see part III E of this opinion; and has incorporated by reference this claim regarding a conflict of interest. We address the claim here for convenience.

recent decision in *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 738–39, the trial court is authorized to monitor developments bearing on the propriety of its class certification orders, and to amend those orders in light of subsequent developments. In *Rivera*, we adopted a rule "similar to that under [rule 23 (c) (1) of the Federal Rules of Civil Procedure], which permits the trial court to revisit the issue of class certification throughout the proceedings." Id., 739. Under both the federal rule and our similar rule, a trial "court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative"; (internal quotation marks omitted) id.; because the court "remains free to modify it in the light of subsequent developments in the litigation." (Internal quotation marks omitted.) Id., 738–39. We conclude that, at this interlocutory stage of the proceedings, the trial court was well within its discretion to grant class certification as to paragraph 20 (b) of the complaint. In the event that evidence later demonstrates that the alleged conflict exists, the trial court may then revisit the issue. Id. Paragraph 20 (b), by itself, does not establish that the alleged conflict exists. The "providers" alleged under paragraph 20 (b) to have received improper incentive bonuses *might* ultimately include primary care physicians who are among the members of the class, but the court acted within its discretion to await the introduction of evidence, if any, demonstrating that fact.[20]

## B

### Paragraph 20 (g) of the Plaintiffs' Complaint

In paragraph 20 (g) of the complaint, the plaintiffs alleged that the defendant breached its agreements with

---

[20] Currently, the defendant only cites to evidence that is ambiguous on the matter. The defendant quotes one deponent's testimony as stating that "*whether* a primary care physician's bonus is improper 'depends on what [it is] for.' " (Emphasis added.)

each class member by "[f]ailing to maintain accurate books and records [leading to] improper payments to the [p]laintiffs . . . ." Similar to paragraph 20 (b) of the complaint, when read liberally and realistically, paragraph 20 (g) alleges a general business practice, or, put another way, a general systematic breakdown, in the defendant's business operations, breaching a contractual duty owed to each plaintiff under a common provision in the agreements. For many of the same reasons discussed in part II A of this opinion explaining why the elements of commonality and typicality were established with respect to paragraph 20 (b), we conclude that the trial court did not abuse its discretion by determining that paragraph 20 (g) of the complaint raised common legal and factual issues. Furthermore, the trial court did not abuse its discretion by determining that the plaintiffs' claims were typical of the claims asserted on behalf of the class members. Under paragraph 20 (g), each representative plaintiff, and member of the represented class, would claim a breach of the same contractual provision by the same business practice. Therefore, each class member would make "similar legal arguments to prove the defendant's liability" satisfying the typicality requirement of Practice Book § 9-7 (3). (Internal quotation marks omitted.) *Marisol A.* v. *Giuliani*, supra, 126 F.3d 376.

The defendant again claims that the plaintiffs' allegations involve individualized inquiries, which are not susceptible to class-wide proof, and that the trial court improperly shifted the burden to establish the requirements of commonality and typicality away from the plaintiffs. The defendant maintains that the "vague nature" of paragraph 20 (g) of the complaint makes it unclear whether the plaintiffs are alleging a *general* failure to maintain accurate books and records, or, rather, a series of failures to maintain accurate books and records, unrelated to any general business practice.

Our previous discussion of the proper construction of paragraph 20 (g) is applicable to this claim. When read liberally and realistically, paragraph 20 (g) alleges a general business practice of failing to maintain accurate books and records. The idea that, in the absence of some general, common cause, each of the plaintiffs would have received improper payments due to the defendant's failure to maintain accurate books is not a realistic reading of the allegations contained in this paragraph. The defendant also asserts that the inquiry into whether each plaintiff actually received "improper payments" as a result of the general bookkeeping practice alleged in paragraph 20 (g) would necessarily be an individualized, variable inquiry, not susceptible to class-wide proof. Again, a liberal reading of paragraph 20 (g) indicates that the defendant promulgated a general, system-wide business practice leading to inaccurate record keeping, yielding improper payments to all of the class members. The idea that such an ongoing, general practice would yield entirely accurate fee payments to some of the members of the class is not a realistic reading of the allegations in paragraph 20 (g). To the extent that those inaccuracies would vary in frequency and amount from class member to class member, such variation would impact only the proper amount of damages. "That there may be individual consideration of the issue of damages has never been held to bar certification of a class." *Marr* v. *WMX Technologies, Inc.*, supra, 244 Conn. 682.

Finally, the defendant again claims that there was insufficient evidence to establish that any of the plaintiffs had suffered the breach alleged. More specifically, the defendant maintains that no direct evidence of a general business policy to maintain inaccurate books, or improper payments resulting therefrom, has yet been introduced. As explained previously in this opinion, the introduction of evidence to support the merits of the

plaintiffs' claim is not required for class certification. In any event, even if evidence supporting the plaintiffs' claim were required, such evidence had been gained through discovery. As the plaintiffs note, several of the deposed physicians had testified that their requests for fee schedules were answered in a delayed, piecemeal fashion, such that they could not assess " 'what [they should be] paid on a consistent basis for any appreciable period of time . . . .' " Although, as the plaintiffs also note, "most of the evidence at this stage . . . is inferential," "there is no legal distinction between direct and circumstantial evidence so far as probative [value] is concerned." (Internal quotation marks omitted.) *DiMartino* v. *Richens*, 263 Conn. 639, 674–75, 822 A.2d 205 (2003). The defendant contends that some of the evidence establishes that the plaintiffs have been properly paid, according to the terms of the agreement. The deposition testimony cited by the defendant, although perhaps relevant to a defense, does not establish that proposition. The defendant cites the following statements of two physicians as support for its argument: "in general, the paperwork [they had received] has been appropriate"; and they "have been paid according to the letter of the contract . . . ." Each of these statements, if given the import suggested by the defendant, are vague legal conclusions that the witnesses were not necessarily qualified to draw, and do not establish the fact that proper payments had been made under the terms. Notably, the latter statement was followed with the caveat that the witness did not "feel [that the payments were] fair . . . ."

C

Paragraph 20 (m) of the Plaintiffs' Complaint

In paragraph 20 (m) of the complaint, the plaintiffs alleged that the defendant breached its agreements with each class member by "failing to provide senior person-

nel to work with the [p]laintiffs or other [members of the class]." Again, when read liberally and realistically, this paragraph alleges a general practice of the defendant, breaching the contractual agreement with each class member. The notion that the defendant failed to provide senior support personnel to work with each of the plaintiffs due to varying, independent causes, as the defendant suggests, is not a realistic reading of the plaintiffs' complaint. Thus, for many of the same reasons discussed in part III A and B of this opinion, with respect to paragraphs 20 (b) and (g) of the complaint, the trial court did not abuse its discretion in granting class certification with respect to paragraph 20 (m) of the plaintiffs' complaint. The general business practice alleged, breaching a common provision of each class member's agreement with the defendant, would involve common legal and factual issues, satisfying the commonality requirement of Practice Book § 9-7 (2). Furthermore, because each class member's claim involves the same breach of a common contractual provision, each class member would make "similar legal arguments to prove the defendant's liability"; (internal quotation marks omitted) *Marisol A.* v. *Giuliani*, supra, 126 F.3d 376; satisfying the typicality requirement of Practice Book § 9-7 (3).

The defendant again claims that the allegation at issue would be highly individualized across the class, requiring an inquiry into whether each member was deprived of access to senior support personnel. Again, if the plaintiffs established that the defendant promulgated a general policy of not providing senior personnel to the members of the class, an inquiry into each individual instance where a given member sought, and failed to gain, access to such personnel would be relevant only to the question of damages. The general practice of failing to provide the senior personnel, alone, is suffi-

cient to establish liability for breach of contract under paragraph 20 (m) of the complaint.

The defendant again maintains that the elements of commonality and typicality were not established with respect to paragraph 20 (m) of the complaint because none of the plaintiffs had suffered the "harm" alleged. Specifically, the defendant contends that "none of the evidence in the record identifies a single, specific instance in which a claim was denied because a [p]laintiff was unable to speak with senior personnel." Again, the defendant's argument depends upon the proposition that an inquiry into specific instances of unpaid fees is relevant to the breach alleged. The practice of failing to provide access to senior personnel, itself, is the alleged breach of contract contained in paragraph 20 (m). A specific inquiry into evidence of improperly denied claims on the basis of the breach alleged is relevant only to the question of damages.

The defendant also renews its contention that the trial court "shifted the burden of proof to" the defendant to establish commonality and typicality by failing to require further evidence of the general practice alleged in paragraph 20 (m) of the complaint. Again, evidentiary support of the plaintiffs' claim is pertinent only to the merits. "[I]n determining the propriety of a class action . . . the question is not whether the plaintiff or plaintiffs . . . will prevail on the merits, but rather whether the requirements of [the class action rules] are met." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 743. "[I]n determining whether to certify the class, [however] a [trial] court is bound to take the substantive allegations of the complaint as true." (Internal quotation marks omitted.) Id.

In summary, the trial court did not abuse its discretion in determining that the elements of commonality

and typicality were established with respect to paragraphs 20 (b), (g) and (m) of the plaintiffs' complaint. Each of those three paragraphs alleged legal and factual issues common to the class, satisfying the commonality requirement of Practice Book § 9-7 (2), and the plaintiffs' claims under those paragraphs are typical of the claims of the class members, satisfying the typicality requirement of Practice Book § 9-7 (3).

D

Predominance Requirement of Practice Book § 9-8

Next, the defendant claims that the trial court abused its discretion in granting the plaintiffs' motion for class certification because they had failed to establish that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," as required to maintain a class action under Practice Book § 9-8. Specifically, the defendant contends that the trial court was required, under Practice Book § 9-8, to determine whether the predominance requirement was satisfied as to paragraphs 20 (b), (g) and (m) of the complaint, and that the court failed to do so. We agree with the defendant.

In its memorandum of decision granting, in part, the plaintiffs' motion for class certification, the trial court recited the predominance requirement as part of its standard of review for assessing the propriety of class certification. The court noted that, under Practice Book § 9-8, "an action 'may be maintained as a class action if the prerequisites of [Practice Book] § 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . .' " In its application of the class action requirements to the present case, however, the court did not revisit the question of predominance.

As stated previously in this opinion, our review of the trial court's order granting the plaintiffs' motion for class certification "is confined to determining whether the trial court abused its discretion." (Internal quotation marks omitted.) *Marr* v. *WMX Technologies, Inc.*, supra, 244 Conn. 680. "While it is normally true that this court will refrain from interfering with a trial court's exercise of discretion . . . this presupposes that the trial court did in fact exercise its discretion. . . . *Higgins* v. *Karp*, 243 Conn. 495, 504, 706 A.2d 1 (1998); see *State* v. *Lee*, 229 Conn. 60, 73–74, 640 A.2d 553 (1994) ([i]n the discretionary realm, it is improper for the trial court to fail to exercise its discretion). [D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Danbury* v. *Dana Investment Group*, supra, 249 Conn. 35–36. The abuse of discretion standard of review, as applied in the context of class certification orders, presupposes that the trial court "has applied the proper legal standards in deciding whether to certify a class . . . ." (Internal quotation marks omitted.) *In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 132 (2d Cir. 2001), cert. denied, 536 U.S. 917, 122 S. Ct. 2382, 153 L. Ed. 2d 201 (2002).

In the present case, the trial court was required to apply the proper legal standards for assessing whether the predominance prerequisite for class certification was satisfied, as required for class certification under Practice Book § 9-8. The requirements for maintaining a class action under Practice Book § 9-8 are substantially identical to the requirements for maintaining a class action under rule 23 (b) (3) of the Federal Rules of Civil Procedure. Under both rules, the party seeking class certification must demonstrate, in addition to the

requirements of numerosity, commonality, typicality and adequacy of representation; see Practice Book § 9-7; see also Fed. R. Civ. P. 23 (a); that *the questions of law or fact common to the members of the class predominate over any questions affecting only individual members* and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (Emphasis added.) Practice Book § 9-8; Fed. R. Civ. P. 23 (b) (3); see generally *Amchem Products, Inc.* v. *Windsor*, supra, 521 U.S. 614 ("[i]n addition to satisfying [r]ule 23 [a]'s prerequisites, parties seeking class certification must show that the action is maintainable under [r]ule 23 [b]").

"[T]he predominance criterion is far more demanding" than the requirement of commonality, which, as discussed previously in part III of this opinion, the trial court did address. *Amchem Products, Inc.* v. *Windsor*, supra, 521 U.S. 624. The "predominance inquiry tests whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation. . . . Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." (Citations omitted; internal quotation marks omitted.) *Moore* v. *Paine-Webber, Inc.*, supra, 306 F.3d 1252. In making this assessment, rule 23 (b) (3) of the Federal Rules of Civil Procedure suggests consideration of the following four factors: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Although, in the section of its memorandum of decision discussing the standard of review, the trial court recited the fact that the predominance requirement must be established to certify the class, it did not proceed to apply the proper standards, discussed previously, for assessing whether the predominance requirement was satisfied. Where a trial court's "certification order merely reiterates [the] predominance requirement and is otherwise silent as to any reason why common issues predominate over individual issues . . . [the trial court has] abused its discretion by not adequately considering the predominance requirement before certifying the class." (Citation omitted.) *Valentino* v. *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Therefore, the trial court's class certification order must be reversed, based on the failure of the court to exercise its discretion regarding the predominance requirement.

Because the issue will arise again on remand, we take this opportunity to clarify our approach for assessing whether the predominance requirement is satisfied in a *partial* class action. As explained previously in part I of this opinion, the proper construction of the class action requirements differs in the context of a partial class action. We conclude that, in the context of a partial class action, where class certification is limited to particular issues, the requirement of Practice Book § 9-8, namely, that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" calls for a weighing of the common and individual questions involved *within those certified issues*, rather than the common and individual issues involved in the *entire action*. As explained in part I of this opinion, the class action requirements are designed to balance the economic

benefits of proceeding with a class action, discussed previously, against any procedural unfairness, which might result from class certification. See *Amchem Products, Inc.* v. *Windsor*, supra, 521 U.S. 615. The predominance requirement, specifically, was created for exactly that purpose. Recognizing this, the Advisory Committee for the 1966 Amendments to the Federal Rules of Civil Procedure, which adopted the federal analogue of all of the class action requirements at issue in this appeal, described the predominance requirement as, essentially, an inquiry into whether the economies of class certification can be achieved. See Proposed Rules of Civil Procedure, Rule 23, reprinted in 39 F.R.D. 69, 103 (1966) ("[i]t is only where . . . predominance exists that economies can be achieved by means of the class-action device"). As the United States Supreme Court has stated: "In adding predominance and superiority to the qualification-for-certification list, the Advisory Committee [on the Federal Rules of Civil Procedure] sought to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." (Internal quotation marks omitted.) *Amchem Products, Inc.* v. *Windsor*, supra, 615. As with the requirements of commonality, typicality and adequacy of representation, the predominance requirement also tests whether "the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of the Southwest* v. *Falcon*, supra, 457 U.S. 157 n.13. A leading treatise relates the fundamental rationale underlying the predominance requirement as follows: "Since all members of a . . . class who do not exercise their right to be excluded from the action will be bound by the judgment, it is essential that their interests be con-

nected closely. Otherwise, inaction on the part of an absentee, which in many cases will not represent acquiescence, may result in him being bound by a judgment in an action in which his interests were not presented effectively. Moreover, when individual rather than common issues predominate, the economy and efficiency of class action treatment are lost . . . ." 7A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure (2d Ed. 1986) § 1778, pp. 536–39. In a partial class action, the binding effect of the judgment on absent class members is limited to the particular claims for which class certification was granted. See generally 7B C. Wright, A. Miller & M. Kane, supra, §§ 1789 through 1790, pp. 238–85. As a result, the concern for adequate representation is limited to the certified issues, for which there is such representative litigation; therefore, the applicability of the predominance requirement similarly should be limited.

We note that there is currently a split in the Federal Circuit Courts of Appeals on this particular issue. The United States Court of Appeals for the Fifth Circuit disagrees, at least in part, with the approach set forth in this opinion. In *Castano* v. *American Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996), the Court of Appeals stated that "a [D]istrict [C]ourt cannot manufacture predominance through the nimble use of subdivision (c) (4) [of rule 23 of the Federal Rules of Civil Procedure permitting partial class actions]. The proper interpretation of the interaction between [the predominance requirement] and [subdivision] (c) (4) is that a cause of action, as a whole, must satisfy the predominance requirement . . . and that [subdivision] (c) (4) is a housekeeping rule that allows courts to sever the common issues for a class trial." The Fifth Circuit then cited a case decided by the United States Court of Appeals for the Ninth Circuit as supporting its proposition. Subsequently, however, the Ninth Circuit stated

an approach consistent with our interpretation of the predominance requirement in the context of partial class actions. In *Valentino* v. *Carter-Wallace, Inc.*, supra, 97 F.3d 1234, the Ninth Circuit stated: "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy. . . . Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, [r]ule 23 authorizes the [D]istrict [C]ourt in appropriate cases to isolate the common issues under [r]ule 23 (c) (4) (A) and proceed with class treatment of these particular issues." (Citation omitted.) Since *Valentino*, the Fifth Circuit has, nonetheless, reaffirmed its contrary position in *Allison* v. *Citgo Petroleum Corp.*, 151 F.3d 402, 421–22 (5th Cir. 1998) (considering "as a whole, the plaintiffs' pattern or practice [discrimination] claim" to assess predominance); see also *Peoples* v. *Wendover Funding, Inc.*, 179 F.R.D. 492 (D. Md. 1998).[21]

The United States Court of Appeals for the Second Circuit[22] recently discussed this split of authority in *Robinson* v. *Metro-North Commuter R. Co.*, supra, 267 F.3d 147. While noting that it did "not decide the question, [which] would be an issue of first impression in this circuit [the court] caution[ed] that" the Fifth Circuit's approach was contrary to the position of the Ninth Circuit. Id., 167 n.12. The Second Circuit further cited

[21] In *Peoples* v. *Wendover Funding, Inc.*, supra, 179 F.R.D. 492, the federal District Court of Maryland took the Fifth Circuit's approach a step further. Rather than require that the "cause of action, as a whole," satisfy the predominance requirement; *Castano* v. *American Tobacco Co.*, supra, 84 F.3d 745 n.21; the District Court interpreted *Castano* as requiring that the court determine whether "common questions predominate in the *case as a whole* . . . ." (Emphasis added.) *Peoples* v. *Wendover Funding, Inc.*, supra, 501 n.4.

[22] Again, we note that "[d]ecisions of the Second Circuit Court of Appeals, although not binding on us, are particularly persuasive." *Turner* v. *Frowein*, 253 Conn. 312, 341, 752 A.2d 955 (2000).

a relevant opinion from the District of Missouri, *In re Tetracycline Cases,* 107 F.R.D. 719 (W.D. Mo. 1985), which first advanced the approach taken by the Ninth Circuit. The court in *In re Tetracycline Cases* looked to some of the same underlying principles of increasing judicial economy, discussed previously in this opinion, that counsel toward our, and the Ninth Circuit's, approach: "What [the] defendants [condemn] as a dilution of the predominance requirement, however, appears to this court to be precisely what [r]ule 23 (c) (4) (A) allows in the interests of flexibility and economies of adjudication. Professors Wright and Miller, for instance, have pointed out [that] . . . [e]ven though a court decides that the common questions do not predominate . . . the court always should consider the possibility of determining particular issues on a representative basis as permitted by [r]ule 23 (c) (4) (A) . . . . *The effect may be to make the common issues in the recast class action predominate for purposes of [r]ule 23 (b) (3).*" (Emphasis in original; internal quotation marks omitted.) Id., 727.

E

Adequacy of Representation Requirement
of Practice Book § 9-7 (4)

Next, the defendant claims that the plaintiffs cannot fairly and adequately represent the certified class, as required to bring a class action under Practice Book § 9-7 (4). The defendant offers three specific arguments in support of this claim, each of which alleges conflicts of interest between the named plaintiffs, who are all orthopedic surgeons or groups of orthopedic surgeons, and the represented class, which includes all physicians who have entered the relevant contractual agreements with the defendant. We are not persuaded.

Both Practice Book § 9-7 (4) and rule 23 (a) (4) of the Federal Rules of Civil Procedure state that a class

certification may be granted "only if . . . the represen-
tative parties will fairly and adequately protect the inter-
ests of the class." The adequacy of representation "rule
requires courts to ask whether [a representative] 'plain-
tiff's interests are antagonistic to the interest of other
members of the class.' *Baffa* v. *Donaldson, Lufkin &
Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); see
also *Amchem [Products, Inc.* v. *Windsor*, supra, 521
U.S. 625–26] (stating that class members must 'possess
the same interest and suffer the same injury' to meet
the [r]ule 23 [a] [4] requirement) . . . ." *In re Visa
Check/Mastermoney Antitrust Litigation*, supra, 280
F.3d 142. "The adequacy-of-representation requirement
tend[s] to merge with the commonality and typicality
criteria of [r]ule 23 (a), which serve as guideposts for
determining whether . . . maintenance of a class
action is economical and whether the named plaintiff's
claim and the class claims are so interrelated that the
interests of the class members will be fairly and ade-
quately protected in their absence." (Internal quotation
marks omitted.) *Amchem Products, Inc.* v. *Windsor*,
supra, 626 n.20.

First, the defendant contends that "orthopedists
'have [their] own unique issues and problems as
opposed to other specialties.' " Although this vague
observation is, undoubtedly, true, the defendant does
not proceed to analyze how such a general divergence
of interests bears on the plaintiffs' representation of
the class with respect to the issues certified in this class
action. "Analysis, rather than mere abstract assertion,
is required in order to avoid abandoning an issue by
failure to brief the issue properly. . . . We will not
review claims absent law and analysis." (Internal quota-
tion marks omitted.) *State* v. *Van Eck*, 69 Conn. App.
482, 493, 795 A.2d 582, cert. denied, 260 Conn. 937, 802
A.2d 92, cert. denied, 261 Conn. 915, 806 A.2d 1057
(2002).

Second, the defendant argues that paragraph 20 (b) of the plaintiffs' complaint exposes a direct conflict of interest between the named plaintiffs and the represented class. This argument is a restatement of an argument that the defendant made in the context of its claim that the plaintiffs had failed to establish the elements of commonality and typicality. See part III A of this opinion.[23] Accordingly, our analysis of this argument is subsumed in our analysis of whether the plaintiffs had established the elements of commonality and typicality.

Finally, the defendant notes that several of the named plaintiffs have withdrawn from prosecuting the litigation. From this, the defendant argues that a conflict of interest exists in the litigation, even among the named plaintiffs, who are fellow orthopedic surgeons and members of the larger class. The defendant claims that the plaintiffs who withdrew opposed the litigation either because they "did not find this suit to have merit" or did not wish to incur the costs of litigation. These differing interests do not implicate the adequacy of representation requirement. The withdrawn plaintiffs will not incur the expenses complained of as the representative plaintiffs proceed with this class action. Although the withdrawn plaintiffs may have voiced a differing cost analysis with respect to the benefits of the litigation, they still share an interest in those benefits. Therefore, the representative plaintiffs' interests in proceeding with this class action are not antagonistic to the withdrawn plaintiffs' interests. *In re Visa Check/ Mastermoney Antitrust Litigation*, supra, 280 F.3d 142.

---

[23] The fact that "[t]he commonality and typicality requirements . . . tend to merge with the adequacy-of-representation requirement," explains the overlap in the defendant's arguments. *General Telephone Co. of the Southwest* v. *Falcon*, supra, 457 U.S. 157 n.13.

## F

### Superiority Requirement of Practice Book § 9-8

Finally, the defendant claims that a class action is not " 'superior to other available methods for the fair and efficient adjudication of the controversy,' " as required by Practice Book § 9-8, and that, therefore, the trial court abused its discretion in granting, in part, the plaintiffs' motion for class certification. We disagree.

As discussed previously in this opinion, under both rule 23 (b) (3) of the Federal Rules of Civil Procedure and Practice Book § 9-8, "a class must meet two requirements beyond the [r]ule 23 (a) [and Practice Book § 9-7] prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' . . . Sensitive to the competing tugs of individual autonomy for those who might prefer to go it alone or in a smaller unit, on the one hand, and systemic efficiency · on the other, the Reporter for the 1966 amendments cautioned: 'The new provision invites a close look at the case before it is accepted as a class action . . . .' " (Citation omitted.) *Amchem Products, Inc.* v. *Windsor,* supra, 521 U.S. 615.

Several "[f]actors [are] relevant to the superiority of a class action under [r]ule 23 (b) (3) includ[ing]: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation con-

cerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *In re Visa Check/Mastermoney Antitrust Litigation*, supra, 280 F.3d 133.

The trial court expressly considered whether the superiority requirement was satisfied before granting class certification. The court began by noting that "[t]he class is not so large as to present manageability issues, and the named plaintiffs appear to have sufficient resources to afford notice to the class and organize and present the claims of [the] class members."[24] The trial court further found that, by permitting a partial class action with respect to the three general business practices described in paragraphs 20 (b), (g) and (m) of the plaintiffs' complaint, a great deal of judicial economy could be achieved, which would be lost if each class member were required to bring an individual action challenging the same conduct. Furthermore, the trial court found that the incentive for each class member to bring an individual action was relatively small, given the inconvenience and expense of doing so, and the relatively moderate potential for individual recovery. The trial court concluded that a class action was a superior method for adjudicating the controversy because "[t]he only potential alternative to class action adjudication of the three claims at issue [was] the maintenance of individual suits by each physician subjected to the policies at issue. Pursuit of these claims in a class action will avoid duplicative lawsuits, multiple adjudications requiring additional judicial resources and the prospect of inconsistent judicial decisions as to injunctive relief, and greater expense to the defen-

---

[24] Those findings are not at issue in this appeal.

dant from defending multiple suits presenting the same claims."

These findings by the trial court do not appear to us, in light of the defendant's arguments, to be an abuse of discretion. There appears to be a certain economy in settling each class member's claim against the defendant for the unlawful, general business practices alleged in paragraphs 20 (b), (g) and (m) of the complaint, which is the main benefit in permitting a partial class action. See 7B C. Wright, A. Miller & M. Kane, supra, § 1790, p. 271; see also *Robinson* v. *Metro-North Commuter R. Co.*, supra, 267 F.3d 167 (courts should "take full advantage of [the partial certification] provision to certify separate issues in order . . . to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies" [internal quotation marks omitted]).

The defendant maintains that the action will be unmanageable because of the "myriad individual issues that must be proven if [the plaintiffs] are to prevail on behalf of the class members they seek to represent." For the reasons discussed in parts I and II of this opinion, the plaintiffs will not have to establish the "myriad individual issues" suggested by the defendant. Rather, the plaintiffs need only establish the allegations as to general business practices alleged in paragraphs 20 (b), (g) and (m) of the complaint to secure a judgment on behalf of the class members in this *partial* class action. The trial court did not abuse its discretion by finding that the increased expense of forcing each individual class member to litigate the same claims in separate actions was not justified.

The defendant also takes issue with the trial court's second finding, namely, that the incentive for each of the individual class members to bring and control individual actions was inadequate in light of the relatively

small potential individual recovery. The defendant notes that some of the representative plaintiffs sought substantial damages. Specifically, the defendant notes that one plaintiff, at least at one time, had indicated that he had been wrongfully denied $67,000 in fees by the defendant for one calendar year, which would be a significant incentive to raise an individual action. Setting aside the question of whether the amounts sought by this particular plaintiff's alleged claim were anomalous,[25] the defendant's contention fails to address the question of whether the costs of pursuing this complex case would, nonetheless, be prohibitive. As the plaintiffs suggest, a review of the court file reveals that this is an unusually complex case, involving great expense for the litigants. Additionally, it is unclear, on the basis of the deposition testimony cited by the defendant, whether that particular plaintiff was referring to damages he sought to recover for the breaches alleged in the three class certified claims. The proper analysis of whether each class member has a sufficient incentive to bring an individual action should not turn on a potential recovery for idiosyncratic claims raised by only one representative plaintiff. Finally, the fact that several of the plaintiffs in this action have withdrawn based on their belief that the expense of litigation is not justified, given the poor chance of significant recovery, supports the trial court's finding that the incentive for each member to institute an individual action is relatively low.

Finally, the defendant argues that the trial court's finding that a class action " 'will avoid duplicative law-

---

[25] In the very deposition testimony cited by the defendant, this plaintiff immediately equivocated as to whether he actually sought that sum. That testimony was as follows:

"Q: As part of this suit, will you be seeking the sixty-seven thousand [dollars] that you weren't paid?

"A: I'm seeking some correction on that. . . . I think that the issue is that [the defendant] for its own financial interest has reduced my reimbursement . . . without any discussion with me, but just has imposed [that reduction] on me in a dictatorial fashion which I think is morally wrong."

suits' " is not supported in the record. Specifically, the defendant argues that very few other physicians are inclined to raise the claims at issue in this class action. The plaintiffs disagree with this contention, and offer evidence that the Connecticut State Medical Society has raised a similar class action alleging similar abuses by the defendant. In any event, the trial court's finding at issue does not appear to state that a deluge of individual actions raising the same claims were yet impending. In fact, the court's finding that the incentive to bring such actions was relatively small militates against such an interpretation. Rather, the trial court seems to have been stating that, *if* class certification were not granted, and individual actions were the sole remaining avenue of recovery, the costs of litigating those individual actions indicate that they would be an inferior method of adjudicating the controversy.

## IV

## THE PLAINTIFFS' CROSS APPEAL

The plaintiffs' first two claims on the cross appeal relate to allegations before the trial court that the defendant unlawfully had altered payment terms of the agreements through the adoption of the resource based relative value scale (relative value scale)[26] as a system for calculating the fees to be paid to the plaintiffs in exchange for medical services. Specifically, the plaintiffs claim that the trial court improperly: (1) refused to rule on the merits of their motion for class certification with respect to their claim that the defendant unlawfully had altered the payment terms of the agreements at issue; and (2) denied the plaintiffs' subsequent motion to amend the class certification to encom-

---

[26] As mentioned previously in footnote 10 of this opinion, the relative value scale is a compensation scheme promulgated by the United States government to limit permissible fees for medicare recipients.

pass that claim. The following additional procedural history is relevant to these two claims.

The plaintiffs' original complaint did not specifically allege that the defendant's adoption of the relative value scale breached the payment terms of the agreements. In their memorandum of law in support of their motion for class certification, however, the "plaintiffs claim[ed] that the use and implementation of the [relative value scale] violate[d] the contract provisions of [the agreements]." The trial court noticed the incongruence, and ruled against the plaintiffs' motion for class certification with respect to that claim. The court's reasoning was as follows: "[T]he plaintiffs claim that the use and implementation of the [relative value scale] violates the contract provisions of [the agreements] . . . . The plaintiffs have not, however, alleged in any part of their amended complaint a claim based on changes in the method of calculating the amount to be paid for each service pursuant to the [relative value scale] system. The amended complaint is devoid of any reference to this change in fee structure or to [the relative value scale], either by name or by any general description. A class cannot be certified as to a claim not made in the complaint." (Internal quotation marks omitted.) The court proceeded, however, to grant the plaintiffs' motion for class certification with respect to three other subparagraphs of allegations raised in the complaint. See part III of this opinion.

Following the trial court's order granting, in part, the plaintiffs' motion for class certification, the plaintiffs moved to amend their complaint and the class certification to add a subparagraph alleging that the defendant *did not provide adequate notice* of the change to the relative value scale compensation system. Specifically, the plaintiffs moved to amend the complaint to add the following allegation: "[The defendant has] unilaterally breached the terms of [its] [a]greements [with the plain-

tiffs] . . . *[b]y failing to disclose* the purpose and effect of either the implementation or use of the [relative value scale] as a method of calculating fees for services rendered to patients of the plaintiffs . . . ." (Emphasis added.) This new allegation differed substantially from the plaintiffs' earlier claim, on the original motion for class certification, that the "use and implementation of the [relative value scale]," with or without notice from the defendant, breached the agreements. In their motion to amend the class certification, the plaintiffs underscored that difference between their new allegation of *inadequate notice*, and their previous claim, presented to the trial court on the original motion for class certification, that the *use and implementation* of the relative value scale, itself, breached the agreements: "[We] do not dispute [the defendant's] right to change its basis for reimbursement or to amend the comprehensive fee schedule and reduce or otherwise alter compensation. Nor do the plaintiffs dispute [the defendant's] right to require that some procedures be reimbursed at a fixed percentage of other procedures across the board. If [the defendant] chooses to do so, however, it must notify the doctors." The court granted the plaintiffs' motion to amend their complaint, reasoning that the defendant would not be prejudiced because, although the discovery process was already underway, "discovery ha[d] included production of documents relating to [the relative value scale]" and deposition testimony had also covered the issue. The court further reasoned that the "[t]rial is not scheduled to commence until January 13, 2004," making any delay as a result of the amendment unlikely. The court denied the plaintiffs' motion to amend the class certification, however, for two reasons: (1) because the plaintiffs had not properly analyzed whether the prerequisites to class certification were satisfied with respect to the new allegation; and (2) the motion did not comply with the

timeliness requirements of the court's case management orders. The plaintiffs implicitly concede that they did not present any argument in support of the motion analyzing whether the prerequisites to class certification were satisfied with respect to the allegation that the defendant had failed to notify the plaintiffs properly of the relative value scale compensation system.

## A

First, the plaintiffs claim that the trial court abused its discretion by refusing to rule on the merits of their original motion for class certification with respect to their claim that the defendant unlawfully failed "to notify [the plaintiffs] of the purpose and effect" of the implementation of the relative value scale. Specifically, the plaintiffs argue that the trial court "read [their] complaint too restrictively," when it refused to consider class certification of this claim on the basis that it was not "articulated in the complaint . . . ." The plaintiffs argue that paragraph 20 (n) of the complaint, which states that the defendant violated its agreements with the plaintiffs by "failing to adequately communicate with the [p]laintiffs changes to the underlying [a]greements," encompasses their claim. We disagree.

Contrary to the plaintiffs' central premise in this claim, the trial court did not rule, in its original order granting class certification, that a claim by the plaintiffs as to *improper notice* of the relative value scale was not "articulated in the complaint . . . ." The trial court found, rather, that "the plaintiffs' claim that the *use and implementation of the [relative value scale]* violates [the agreements was not] . . . alleged in any part of their . . . complaint." (Emphasis added; internal quotation marks omitted.) As a result, the plaintiffs' contention that that finding was improper, because the court should have read paragraph 20 (n) of the complaint—an allegation as to improper *notice* of changes to the terms of the agreements—more broadly, to

encompass a claim as to *improper notice* of the implementation of the relative value scale, is inapposite. Accordingly, the plaintiffs' claim as to paragraph 20 (n) of the complaint fails.

B

Next, the plaintiffs claim that the trial court improperly denied their motion to amend the class certification to include the plaintiffs' new claim that the defendant unlawfully had failed "to notify [the plaintiffs] of the purpose and effect" of the change to the relative value scale fee structure. We disagree.

As discussed previously in part IV of the opinion, the court denied the plaintiffs' motion to amend the class certification on two alternate bases: (1) because the plaintiffs had not established, through legal analysis and argument, that the prerequisites to class certification were satisfied with respect to the subject allegation; and (2) because the motion did not comply with the timeliness requirements of the court's case management orders. Because we agree with the trial court's first, independently sufficient basis for denying the plaintiffs' motion, we need not consider the propriety of the second basis for its decision.

The plaintiffs concede that, in their memorandum of law in support of the motion, they did not present any argument analyzing whether the prerequisites to class certification were satisfied with respect to the allegation that the defendant had failed to notify the plaintiffs properly of the relative value scale compensation system. Instead, the plaintiffs contend, incorrectly, that they had already fully briefed and argued that the class certification prerequisites were satisfied in proceedings related to their earlier, original motion for class certification. Again, the plaintiffs' claim is based on the incorrect premise that their claim as to *improper notice* of the change to the relative value scale was briefed on

the original motion for class certification. As discussed in part IV A of this opinion, the plaintiffs had briefed and argued a different issue, which related to the relative value scale. In the plaintiffs' memorandum of law in support of their initial motion for class certification, the "plaintiffs claim[ed] that the *use and implementation* of the [relative value scale] violates the contract provisions of [the agreements]." (Emphasis added.) Again, the plaintiffs' more recent claim concerned the issue of whether the defendant had given *proper notice* to the plaintiffs of the change to the relative value scale compensation system. The trial court did not abuse its discretion by requiring the plaintiffs to establish, with legal analysis, that this new allegation satisfied the prerequisites for class certification. The plaintiffs' memorandum of law on the issue does not even mention the class requirements, much less cite or analyze the law applicable to class certification.

## C

Finally, the plaintiffs claim that the trial court abused its discretion by denying class certification with respect to their allegation, in paragraph 20 (j) of their complaint, that the defendant had engaged in "illegal profiling" of their utilization of medical resources, leading to their potential termination from participation in the agreements. The plaintiffs argue that the trial court improperly found that the element of typicality was not satisfied, primarily on the basis that the representative plaintiffs had not suffered the specific harm of termination from participation in the agreements. More specifically, the plaintiffs argue that actual termination from participation in the agreements was not an element of each representative plaintiff's, and class member's, claim under paragraph 20 (j) of the complaint. We agree.

In paragraph 20 (j) of their complaint, the plaintiffs alleged that the defendant had "unilaterally breached

the terms of the [a]greements . . . [b]y making payment for services dependent on profiling a practice whereby treatment and/or payment for covered services for the patient is permitted/disallowed in whole or part by the use of statistical averages for the treating physician." The trial court determined that the element of typicality was absent with respect to this claim because "[n]one of the named plaintiffs alleges that his or its contract was ever terminated as a result of the use of profiling in assessing physicians' utilization to determine those whose charges or utilizations were outside the statistical norm, nor do they take the position that any particular service was not paid for because of the effect of such profiling." Thus, the trial court interpreted the claim raised in paragraph 20 (j) to require the specific harm of either: (1) nonpayment; or (2) termination from participation in the agreements. Observing that none of the representative plaintiffs appeared to have suffered either of those particular harms, the trial court concluded that their claims were not typical of the claim alleged in paragraph 20 (j), on behalf of the members of the class.

We incorporate by reference the standards for evaluating the elements of commonality and typicality, under Practice Book § 9-7 (2) and (3), discussed previously in part III of this opinion. In addition, we note the United States Supreme Court's general observation that "a class representative must be part of the class and . . . suffer the same injury as the class members." (Internal quotation marks omitted.) *General Telephone Co. of the Southwest* v. *Falcon*, supra, 457 U.S. 156. As stated previously in this opinion, our review of the trial court's judgment in denying a motion for class certification "is confined to determining whether the trial court abused its discretion." (Internal quotation marks omitted.) *Marr* v. *WMX Technologies, Inc.*, supra, 244 Conn. 680; see also *Moore* v. *PaineWebber, Inc.*, supra, 306 F.3d

1252. The proper interpretation of paragraph 20 (j) of the complaint, however, is a question of law, over which we have plenary review; *Cahill* v. *Board of Education*, supra, 198 Conn. 236; and the "[trial] court is bound to take the substantive allegations of the complaint as true." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 743.

Paragraph 20 (j) of the plaintiffs' complaint does not allege that each representative plaintiff's claim depends upon either (1) nonpayment, or (2) termination from participation in the agreements. Thus, we agree with the plaintiffs that the court did not properly interpret that paragraph of their complaint. Paragraph 20 (j) alleges that the defendant breached its agreement with *each* of the plaintiffs "[b]y making payment for services dependent on profiling . . . ." Although the allegation explains that profiling involves the threat of termination and nonpayment for services, the breach is established, according to the claim, through the practice of profiling alone. Therefore, the "harm" that the representative plaintiffs are alleged to share with the class members is the practice itself, which looms as a threat of potential termination or underpayment for services. The fact that the plaintiffs seek injunctive relief to prevent this allegedly unlawful practice reinforces this interpretation of the pleadings. Any instance where the defendant actually terminated a plaintiff from participation in the agreement, or underpaid a fee owed to that plaintiff, would be relevant to the question of damages, but "individual consideration of the issue of damages has never been held to bar certification of a class." *Marr* v. *WMX Technologies, Inc.*, supra, 244 Conn. 682.

Accordingly, we reverse the order of the trial court granting partial class certification and remand the case for further proceedings as follows. On remand, the trial court is directed to determine whether the plaintiffs have established that the predominance requirement of

Practice Book § 9-8 is satisfied with respect to paragraphs 20 (b), (g) and (m) of the complaint. To the extent that the predominance requirement is met with respect to paragraphs 20 (b), (g) and (m), the trial court is directed to reinstate the partial class certification order. With respect to paragraph 20 (j) of the complaint, if the requirements of Practice Book § 9-7, other than typicality, and the requirements of Practice Book § 9-8 are met, the trial court is directed to grant partial class certification with respect to the issues raised in that paragraph.

The order of the trial court granting partial class certification is reversed and the case is remanded to that court for further proceedings consistent with the preceding paragraph.

In this opinion the other justices concurred.