******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LENDINGHOME MARKETPLACE, LLC *v.*
# TRADITIONS OIL GROUP, LLC
## (AC 44450)

Prescott, Cradle and DiPentima, Js.

*Syllabus*

The plaintiff sought to foreclose a mortgage on certain real property owned by the defendant, which was defaulted for failure to appear. Thereafter, the trial court granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon. The plaintiff sent notice of the judgment to the defendant, and certified to the court that notice had been mailed, pursuant to the applicable rule of practice (§ 17-22) and the court's uniform foreclosure standing orders. The defendant failed to redeem the property on or before its law day and title to the property vested in the plaintiff. More than one year after the passage of the law day, the defendant filed a motion to open the judgment of strict foreclosure. The court denied the defendant's motion to open and its subsequent motion to reargue/reconsider that ruling, and the defendant appealed to this court. *Held* that the trial court did not abuse its discretion in denying the defendant's motion to open the judgment of strict foreclosure and its motion to reargue/reconsider that ruling: the particularized factual allegations in this case did not present the rare and extreme circumstances that would justify granting the defendant the extraordinary equitable relief it sought, namely, opening the judgment of strict foreclosure more than one year after title had vested absolutely in the plaintiff, in contravention of the applicable statute (§ 49-15), given that the defendant raised no argument that it improperly had been defaulted for failure to appear or that the court lacked personal jurisdiction over it due to improper service, the record disclosed no nefarious conduct on the part of the plaintiff, and title had already passed to a nonparty purchaser; moreover, although the defendant asserted that it never received the notices sent by the plaintiff, that failure was not fairly attributable to the plaintiff but, instead, to the defendant's apparent failure to update its mailing address on file with the Secretary of the State; furthermore, because there was no error in the court's denial of the defendant's motion to open, the court did not abuse its discretion in denying the defendant's motion to reargue/reconsider that ruling.

Submitted on briefs September 13, 2021—officially released January 11, 2022

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendant, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the defendant was defaulted for failure to appear; thereafter, the court, *Hon. Joseph M. Shortall*, judge trial referee, granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon; subsequently, the court, *Aurigemma, J.*, denied the defendant's motion to open the judgment, and the defendant appealed to this court. *Affirmed.*

*Elio Morgan* submitted a brief for the appellant (defendant).

*Patricia M. Lattanzio* submitted a brief for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. In this mortgage foreclosure action, the defendant, Traditions Oil Group, LLC, which was defaulted for failure to appear, appeals from the trial court's denial of its motion to open the judgment of strict foreclosure rendered in favor of the plaintiff, LendingHome Marketplace, LLC, and from the denial of its subsequent motion to reargue/reconsider that ruling. Although the defendant filed its motion to open more than one year after the passage of the law day set by the court, the defendant nonetheless claims that the court improperly denied its motions because (1) the passing of the law day did not vest absolute title to the subject property in the plaintiff due to the plaintiff's alleged failure to comply with notice requirements in the court's uniform foreclosure standing orders and Practice Book § 17-22;[1] (2) the court's finding that the plaintiff had complied with those notice requirements was clearly erroneous; (3) the court failed to hold a hearing on the motion to open in violation of the defendant's right to due process; and (4) the court abused its discretion by summarily denying the defendant's motion to reargue. We conclude that the court properly denied the defendant's motions and, accordingly, affirm the judgment of the court.

The record reveals the following relevant facts and procedural history. The plaintiff commenced the underlying foreclosure action on June 28, 2019, with respect to certain property in Newington. According to the complaint, in 2018, the plaintiff had brought a prior action to foreclose a mortgage on the property, which mortgage secured a note executed by REI Holdings, LLC (REI), in the principal sum of $185,200.[2] This prior foreclosure action, in which REI also was defaulted for failure to appear, ended in a November 5, 2018 judgment of strict foreclosure rendered in favor of the plaintiff, with the law day set to expire after December 5, 2018. Prior to that date, however, the defendant, who was not a party to the prior action, asserted an interest in the subject property by recording on the Newington land records a statutory form quitclaim deed dated May 18, 2017. The plaintiff commenced the present action to foreclose the defendant's interest in accordance with General Statutes § 49-30.[3]

Process was served on June 28, 2019, in accordance with General Statutes § 34-243r. According to the marshal's return of service, the marshal effectuated service of process by leaving two copies at the Office of the Secretary of the State, which was the defendant's registered agent for service of process, and by sending additional copies via certified mail to the defendant's principal office address in New York City as reflected on the company's registration certificate filed with the Secretary of the State. By statute, all foreign limited liability companies are required to register with the Secretary

of the State and the requisite foreign registration certificate must include the street and mailing addresses of the company's principal office. See General Statutes §§ 34-275a and 34-275b. Any changes to a company's address must be provided to the Secretary of the State on the company's annual report. General Statutes § 34-247k (a) (2) and (b). The marshal filed a supplemental return of service on August 2, 2019, showing that the postal service had returned to the marshal the process mailed to the New York address as "unclaimed" and "unable to forward."

On August 8, 2019, the defendant was defaulted for failure to file an appearance. On September 9, 2019, the plaintiff filed a motion for a judgment of strict foreclosure, which the court subsequently granted on September 23, 2019. A law day for the defendant was set for October 21, 2019.[4]

On September 30, 2019, the plaintiff, in accordance with Practice Book § 17-22, filed with the court a copy of a notice of the entry of a judgment of strict foreclosure, which the plaintiff's counsel certified he mailed to the defendant by first class mail to the defendant's New York address. In addition, the plaintiff filed a copy of the letter that it had sent to the defendant at the same New York address via certified and regular mail pursuant to the court's uniform foreclosure standing orders, which notified the defendant of the entry of the judgment of strict foreclosure and its terms, including the law day and that the defendant risked loss of any potential equity in the property if it failed to take action before the law day passed. The defendant failed to redeem the property on or before its law day and, accordingly, title to the property vested in the plaintiff.[5] See *Ocwen Federal Bank, FSB* v. *Charles*, 95 Conn. App. 315, 322–23, 898 A.2d 197, cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006); see also General Statutes § 49-15. The plaintiff filed a certificate of foreclosure on the Newington land records on November 1, 2019.

On November 2, 2020, more than one year after its law day had passed, the defendant filed an appearance with the court and a motion to open and vacate the judgment of strict foreclosure. A supporting affidavit signed by Jay Seinfeld, the managing member of the defendant, was attached to the motion to open. According to the motion and the affidavit, the defendant never received the notice of the entry of the judgment of strict foreclosure, and the plaintiff "intentionally misrepresented otherwise to the court by way of its false certification in violation of the trial court's standing orders." The plaintiff filed an objection to the motion to open. Attached to the objection as an exhibit were copies of the addressed envelopes and tracking results printed from the United States Postal Service website. The plaintiff also filed a supplemental objection that informed the court that the subject property had been

sold to a third party for value on January 17, 2020. The plaintiff attached to the supplemental objection a copy of the recorded deed.

The trial court, *Aurigemma, J.*, denied the defendant's motion to open. In its order, the court first noted the sale of the property to a third party. It then stated: "[T]he defendant has failed to file any affidavit indicating that it did not receive notice or indicating the date on which it did receive notice.[6] Also denied for the reasons set forth in the plaintiff's objections . . . . The plaintiff complied with the service and notice requirements." (Footnote added.) The court subsequently denied without comment the defendant's motion to reargue and reconsider the denial of the motion to open. This appeal followed.[7]

The defendant claims that the court improperly denied its motions because (1) the plaintiff's alleged failure to comply with notice requirements in the court's uniform foreclosure standing orders and Practice Book § 17-22 meant title never passed to plaintiff following the running of the law day; (2) the court's finding that the plaintiff complied with all notice requirements was clearly erroneous; (3) the court violated the defendant's right to due process by failing to hold a hearing on the motion to open; and (4) the court abused its discretion by summarily denying the defendant's motion to reargue/reconsider the denial of the motion to open. We conclude, for the reasons that follow, that the court properly denied the defendant's motions in accordance with General Statutes § 49-15.

"The relevant standard of review is well established. Whether proceeding under the common law or a statute, the action of a trial court in granting or refusing an application to open a judgment is, generally, within the judicial discretion of such court, and its action will not be disturbed on appeal unless it clearly appears that the trial court has abused its discretion. . . . The trial court's findings of fact, by contrast, are subject to the clearly erroneous standard of review." (Citations omitted; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Rothermel*, 339 Conn. 366, 381–82, 260 A.3d 1187 (2021).

As our Supreme Court has stated, "[t]he law governing strict foreclosure lies at the crossroads between the equitable remedies provided by the judiciary and the statutory remedies provided by the legislature." *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 256, 708 A.2d 1378 (1998). Particularly relevant to the present appeal is § 49-15, which places express statutory limits on the discretionary power of the Superior Court to open a judgment of strict foreclosure once law days have passed.

Section 49-15 (a) provides in relevant part: "(1) Any judgment foreclosing the title to real estate by strict

foreclosure may, at the discretion of the court rendering the judgment, upon the written motion of any person having an interest in the judgment and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable, *provided no such judgment shall be opened after the title has become absolute in any encumbrancer* except as provided in subdivision (2) of this subsection.

"(2) Any judgment foreclosing the title to real estate by strict foreclosure may be opened after title has become absolute in any encumbrancer upon agreement of each party to the foreclosure action who filed an appearance in the action and any person who acquired an interest in the real estate after title became absolute in any encumbrancer, provided (A) such judgment may not be opened more than four months after the date such judgment was entered or more than thirty days after title became absolute in any encumbrancer, whichever is later, and (B) the rights and interests of each party, regardless of whether the party filed an appearance in the action, and any person who acquired an interest in the real estate after title became absolute in any encumbrancer, are restored to the status that existed on the date the judgment was entered." (Emphasis added.)

The defendant's motion to open in the present case primarily was predicated on its claim that the plaintiff falsely had certified its compliance with the terms of the court's standing orders. The defendant also heavily relied on this court's opinion in *Wells Fargo Bank, N.A.* v. *Melahn*, 148 Conn. App. 1, 85 A.3d 1 (2014), as supporting its argument that the trial court should have exercised its equitable powers to open the judgment, in contravention of § 49-15, even though title had vested absolutely in the plaintiff.

In *Melahn*, the plaintiff had failed to give proper notice to the nonappearing defendants by regular and certified mail in accordance with the court's standing orders; see id., 4–5; which requires all foreclosure plaintiffs to send a letter detailing the terms of the judgment rendered to any nonappearing defendant owners within ten days following the entry of a judgment of strict foreclosure. Those standing orders further provide that a plaintiff cannot file a certificate of foreclosure on the relevant land records until it has provided the court with proof that the aforementioned letter has been mailed. The plaintiff in *Melahn* did not mail its notice of the judgment until four days before the law days were set to run and notice was not actually received by the defendant until the actual law day. Id., 4. Furthermore, although the plaintiff in *Melahn* certified its compliance with the court, the notice that it sent did not contain all of the information required under the standing orders. Id., 4–5. This court reasoned that these defi-

ciencies represented the type of "rare and extreme" case in which equity will permit a court to provide relief in response to "an egregious mistake" on the basis of "the unusual specific facts and circumstances . . . including the omissions and falsification by the plaintiff constituting its noncompliance with the strict foreclosure judgment of the court . . . ." (Internal quotation marks omitted.) Id., 3, 11–12. Under those particular circumstances, and because no fault could be attributed to the defendant, this court concluded that the trial court had authority to open the judgment of strict foreclosure despite § 49-15's prohibition against doing so after law days have passed and title has become absolute in any encumbrancer. See id., 12–13; see also General Statutes § 49-15.

More recently, in *U.S. Bank National Assn.* v. *Rothermel*, supra, 339 Conn. 366, our Supreme Court reaffirmed the basic principle that at least some equitable claims could be raised after title had passed in a foreclosure matter as a basis for opening the judgment, but only in "rare and exceptional cases." Id., 377. It stated that the exceptions that might justify equitable interference are limited and must be determined on a case-by-case basis.[8] See id., 376, 379 n.11. Specifically, our Supreme Court cautioned: "[T]he jurisdictional conclusion reached in the present appeal should not be taken as an invitation for parties in strict foreclosure proceedings to repackage motions to open the judgment filed after the passage of the law days in a manner that superficially invokes the inherent powers underlying [*New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 251] or *Melahn*. Exceptions to the general rule against postvesting motions to open judgments of strict foreclosure are, in fact, rare and exceptional. A bare assertion that equity requires such relief is insufficient; as in the present case, the party seeking to invoke the trial court's continuing jurisdiction must base their motion to open on particularized *factual allegations that could support a claim cognizable in equity*. Trial courts may, under existing case law, grant motions to dismiss pursuant to § 49-15 in cases in which a claim raised in a postvesting motion to open fails to present colorable grounds for equitable relief under these limited exceptions, and appellate courts may continue to summarily dismiss appeals taken from those rulings. We note that such a dismissal in the Appellate Court would occur only after the appellant has been given the opportunity to submit a response to an appellee's motion to dismiss or to present argument giving reasons why the case should not be dismissed in response to the court's own motion." (Emphasis added.) *U.S. Bank National Assn.* v. *Rothermel*, supra, 379 n.11.

The present case is readily distinguishable from *Melahn*, and, like in *Rothermel*, we do not view the present case as raising the type of rare and extreme circumstances that would justify departing from the statutory

mandate set forth in § 49-15. See id., 384. On the basis of our review of the facts and procedural history of this case, we conclude that the trial court correctly denied the motion to open because the particularized factual allegations did not justify granting the defendant the extraordinary equitable relief it sought. The defendant raised no argument that it improperly had been defaulted for failure to appear or that the trial court's judgment of strict foreclosure should be opened on the ground that the court lacked personal jurisdiction over it due to improper service of process. The record discloses no nefarious conduct on the part of the plaintiff that could warrant opening the judgment at such a late date, particularly when title to the subject property has already passed to a nonparty purchaser. The defendant raises an immaterial challenge to the content of the notice sent by the plaintiff, and it cannot claim that the notice was not timely mailed by the plaintiff. Accordingly, none of the defects identified by the court in *Melahn* as a basis for its decision to open the judgment in that case is present here.

Although the defendant asserts that it never received the notices sent by the plaintiff, this failure is not fairly attributable to the plaintiff but to the defendant's apparent failure to update its mailing address on file with the Secretary of the State. In short, we reject the defendant's claim that the court abused its discretion by denying its postjudgment motion to open because the defendant has failed to overcome the significant hurdle of alleging factual allegations necessary to avoid the statutory prohibition set forth in § 49-15. Because there was no error in the court's ruling, we also conclude that the court did not abuse its discretion in denying the defendant's motion to reargue/reconsider.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Practice Book § 17-22 provides: "A notice of every nonsuit for failure to enter an appearance or judgment after default for failure to enter an appearance, which notice includes the terms of the judgment, shall be sent by mail or electronic delivery within ten days of the entry of judgment by counsel of the prevailing party to the party against whom it is directed and a copy of such notice shall be filed with the clerk's office. Proof of service shall be in accordance with [Practice Book §] 10-14."

Section D of the Superior Court Standing Orders JD-CV-104 provides: "Within [ten] days following the entry of judgment of strict foreclosure, the plaintiff must send a letter by certified mail, return receipt requested, and by regular mail, to all non-appearing defendant owners of the equity and a copy of the notice must be sent to the clerk's office. The letter must contain the following information: a.) the letter is being sent by order of the Superior Court; b.) the terms of the judgment of strict foreclosure; c.) non-appearing defendant owner(s) of equity risk the loss of the property if they fail to take steps to protect their interest in the property on or before the defendant owners' law day; d.) non-appearing defendant owner(s) should either file an individual appearance or have counsel file an appearance in order to protect their interest in the equity. The plaintiff must file the return receipt with the Court. THE PLAINTIFF MUST NOT FILE A CERTIFICATE OF FORECLOSURE ON THE LAND RECORDS BEFORE PROOF OF MAILING HAS BEEN FILED WITH THE COURT." (Emphasis in original.)

[2] Although the complaint states that the mortgage at issue was executed by an Elberta McCormack, this appears to be a drafting error. McCormack's

name does not appear on the mortgage or any other relevant document. A copy of the mortgage was attached to the complaint in the prior action and shows that the mortgagor was REI.

[3] General Statutes § 49-30 provides: "When a mortgage or lien on real estate has been foreclosed and one or more parties owning any interest in or holding an encumbrance on such real estate subsequent or subordinate to such mortgage or lien has been omitted or has not been foreclosed of such interest or encumbrance because of improper service of process or for any other reason, all other parties foreclosed by the foreclosure judgment shall be bound thereby as fully as if no such omission or defect had occurred and shall not retain any equity or right to redeem such foreclosed real estate. Such omission or failure to properly foreclose such party or parties may be completely cured and cleared by deed or foreclosure or other proper legal proceedings to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party or parties thus not foreclosed, or their respective successors in title."

[4] The court also found that the debt as of the judgment date was $244,478.09 and that the fair market value of the property was $150,000.

[5] "In Connecticut, a mortgagee has legal title to the mortgaged property and the mortgagor has equitable title, also called the equity of redemption. . . . The equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage, the most important of which is usually the payment of money. . . . Under our law, an action for strict foreclosure is brought by a mortgagee who, holding legal title, seeks not to enforce a forfeiture but rather to foreclose an equity of redemption unless the mortgagor satisfies the debt on or before his law day. . . . Accordingly, [if] a foreclosure decree has become absolute by the passing of the law days, the outstanding rights of redemption have been cut off and the title has become unconditional in the plaintiff, with a consequent and accompanying right to possession. The qualified title which the plaintiff had previously held under his mortgage had become an absolute one." (Citation omitted; internal quotation marks omitted.) *Sovereign Bank* v. *Licata*, 178 Conn. App. 82, 97, 172 A.3d 1263 (2017).

[6] It is not clear from the court's statement whether the court meant that no affidavit was attached to the motion or only that the attached affidavit lacked the specific information identified by the court. In either instance, we agree with the defendant that the court's statement is belied by the record. As previously indicated, the defendant attached a supporting affidavit to its motion to open. The defendant averred through its managing member that "[a]t no time subsequent to September 23, 2019 was [any correspondence] detailing the notice of judgment in the above captioned matter received by the [defendant] as certified or regular mail" and that "[t]he terms of the judgment . . . only became known after title had arguably passed to the [plaintiff]." Thus, the defendant both provided the court with an affidavit and indicated in that affidavit that it had not received notice of the judgment. Nevertheless, we are convinced that this error by the court was harmless because even if the court had acknowledged the affidavit and the defendant's assertion that it did not receive notice, the facts averred in the affidavit do not establish that this is the type of "rare and exceptional" case warranting the extraordinary relief sought by the defendant. See *U.S. Bank National Assn.* v. *Rothermel*, 339 Conn. 366, 377, 260 A.3d 1187 (2021).

[7] On September 7, 2021, this court ordered the parties to file supplemental briefs addressing the applicability to the present appeal of our Supreme Court's decision in *U.S. Bank National Assn.* v. *Rothermel*, 339 Conn. 366, 260 A.3d 1187 (2021), which was released on June 23, 2021, after the parties had filed their principal briefs.

[8] Although the court in *Rothermel* cited to *Cavallo* v. *Derby Savings Bank*, 188 Conn. 281, 449 A.2d 986 (1982), for the proposition that "[f]raud, accident, mistake, and surprise are recognized grounds for equitable interference"; (internal quotation marks omitted) id., 285; the court did not provide any additional guidance regarding what might qualify in the future as a rare and exceptional case. See *U.S. Bank National Assn.* v. *Rothermel*, supra, 339 Conn. 379.

---