******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## 707 BLUE HILLS, LLC *v.* JOHN M. KELLY ET AL.
### (AC 47039)

Cradle, C. J., and Alvord and Wilson, Js.

*Syllabus*

The plaintiff, a former client of the defendant attorneys K and G, and their law firm L Co., appealed from the trial court's judgment granting the defendants' motion to strike certain counts of the complaint, including, inter alia, legal malpractice and violations of the Connecticut Unfair Trade Practices Act (§ 42-110a et seq.), as legally insufficient. The plaintiff claimed, inter alia, that the court improperly granted the defendants' motion to strike without affording it the opportunity to present oral argument. *Held*:

This court concluded that it had jurisdiction to consider the portion of the appeal that challenged the plaintiff's stricken CUTPA claims against K and L Co., even though two counts of the complaint remained pending against those defendants, as the plaintiff relied on the same factual and legal issues in the stricken claim against G and the stricken CUTPA claims against K and L Co., and, therefore, the sufficiency of the stricken CUTPA claims against K and L Co. and the sufficiency of the stricken claim against G were inextricably intertwined.

The trial court did not abuse its discretion in granting the defendants' motion to strike without affording the plaintiff an opportunity for oral argument, as the plaintiff did not timely request oral argument pursuant to the rule of practice (§ 11-18 (a) (2)) and did not pursue a timely objection to the motion to strike pursuant to the rule of practice (§ 10-40).

Argued March 26—officially released September 9, 2025

*Procedural History*

Action to recover damages for, inter alia, the alleged legal malpractice of the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Rosen, J.*, granted the defendants' motion to strike certain counts of the complaint and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*John A. Sodipo*, for the appellant (plaintiff).

*Jessica L. Topper*, with whom, on the brief, was *Ashley A. Noel*, for the appellees (defendants).

*Opinion*

WILSON, J. This appeal arises out of a legal malpractice action brought by the plaintiff, 707 Blue Hills, LLC, against the defendants, John M. Kelly, David L. Griffith, and the law firm of Griffith & Kelly, LLC (law firm),[1] which represented the plaintiff in a prior civil action (prior action). On appeal, the plaintiff claims that the court improperly granted the defendants' motion to strike without affording it an opportunity for oral argument. We affirm the judgment of the trial court striking counts five, six, seven and eight of the plaintiff's complaint.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. On September 7, 2022, the plaintiff commenced the underlying legal malpractice action against the defendants in connection with their representation of the plaintiff in the prior action. See *707 Blue Hills, LLC* v. *Remax Premier Realtors*, Superior Court, judicial district of Hartford, Docket No. CV-20-6122175-S. The operative complaint alleged the following twelve counts: legal malpractice against Kelly (count one); legal malpractice against the law firm (count two); "legal malpractice (recklessness)" against Kelly (count three); "legal malpractice (recklessness)" against the law firm (count four); violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., against Kelly (count five); violations of CUTPA against the law firm (counts six and eight); violations of CUTPA against Griffith (count seven); breach of fiduciary duty against Kelly (count nine); breach of fiduciary duty against the law firm (count ten); fraudulent misrepresentation against Kelly (count eleven); and fraudulent misrepresentation against the law firm (count twelve).[2]

---

[1] In this opinion, we refer to Kelly, Griffith, and the law firm collectively as the defendants and individually by name where appropriate.

[2] We note that this case was consolidated with *Apex Properties, LLC* v. *John M. Kelly*, Superior Court, judicial district of Hartford, Docket No. CV-

On November 23, 2022, the defendants filed a motion to strike counts three through twelve of the plaintiff's complaint, along with a supporting memorandum of law, on the ground that the counts were legally insufficient. The plaintiff did not file a response to the motion to strike within thirty days of its filing, as required by Practice Book § 10-40 (a).[3] On January 5, 2023, after the time had expired for filing its objection to the motion to strike, the plaintiff filed a motion for extension of time, requesting that it be permitted "up to and including February 8, 2023 . . . to respond to the defendants' motion to strike . . . ." On January 17, 2023, the defendants filed an objection to the plaintiff's motion for extension of time. It does not appear that the trial court ever ruled on the plaintiff's motion for extension of time. The motion to strike appeared on the March 13, 2023 short calendar, and, on March 9, 2023, the defendants marked the motion to strike as "take papers." On March 13, 2023, the trial court, *Rosen*, *J.*, granted the motion to strike "[f]or the reasons set forth in the defendants' supporting memorandum of law. In its order, the court noted that "[t]he plaintiff did not file an opposition memorandum." On the same day, again, after the time for filing an objection to the motion to strike had expired, the plaintiff filed an objection to the motion to strike, accompanied by a supporting memorandum of law and an exhibit. The plaintiff also filed a motion for oral argument, requesting that the court "schedule [the plaintiff's] objection to the . . . motion to strike for oral argument as of right." The trial court, however, did not act on any of these filings. On March 24, 2023,

22-6160766-S. The consolidation of the present case and *Apex Properties, LLC,* has no bearing on the disposition of the plaintiff's claims in the present appeal.

[3] Practice Book § 10-40 (a) provides: "Any adverse party shall have thirty days from the filing of the motion to strike to respond to a motion to strike filed pursuant to Section 10-39 by filing and serving in accordance with Sections 10-12 through 10-17 a memorandum of law in opposition."

the plaintiff filed a motion to reconsider the trial court's March 13, 2023 decision granting the defendants' motion to strike, claiming, inter alia, that the court "might have likely overlooked the fact that the plaintiff filed its objection [to the motion to strike] and requested that the motion be heard at oral argument as of right." In its motion to reconsider, the plaintiff also challenged the court's finding that the plaintiff had not filed an objection, representing that, "[d]espite the fact that [the plaintiff's counsel's] office had service problems, which delayed the filings, the objection was filed on the morning prior to the scheduled calendar." On April 6, 2023, the defendants filed an objection to the motion to reconsider. On April 10, 2023, the trial court denied the plaintiff's motion to reconsider. The plaintiff did not file a substitute complaint.

On August 23, 2023, the defendants filed a motion for judgment as to the stricken counts (counts three through twelve) of the complaint pursuant to Practice Book § 10-44.[4] On August 31, 2023, the plaintiff filed an objection to the motion for judgment, stating, inter alia, that "the complaint is being amended in regards to counts three through twelve." On September 1, 2023, the defendants filed a reply to the plaintiff's objection to the defendants' motion for judgment.

Thereafter, on September 5, 2023, the plaintiff filed a motion for leave to file an amended complaint, accompanied by the proposed amended complaint. Also on that date, the court granted the defendants' motion for

---

[4] Practice Book § 10-44 provides in relevant part: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint, or any count in a complaint, counterclaim or cross complaint has been stricken, and the party whose pleading or a count thereof has been so stricken fails to file a new pleading within that fifteen day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint, counterclaim or cross complaint, or count thereof."

judgment, stating: "The plaintiff failed to timely file an amended complaint in accordance with the court's prior orders. The court therefore enters judgment [in favor of the defendants] on the counts of the plaintiff's complaint that were previously ordered stricken." On September 13, 2023, the defendants filed an objection to the plaintiff's motion for leave to file an amended complaint. Subsequently, on September 30, 2023, the trial court sustained the defendants' objection to the plaintiff's motion for leave to file an amended complaint, ruling that "[t]he plaintiff's proposed amended complaint is an improper attempt to restate claims that the court had ordered stricken, and as to which the court had entered judgment in favor of the defendants."

On September 27, 2023, the plaintiff filed a motion to reconsider the trial court's September 5, 2023 decision granting the defendants' motion for judgment. On October 5, 2023, the defendants filed an objection to the motion to reconsider. On October 10, 2023, the trial court sustained the defendants' objection and denied the plaintiff's motion to reconsider. Thereafter, on October 30, 2023, the plaintiff filed this appeal. During the pendency of this appeal, this court, sua sponte, ordered the parties to file supplemental memoranda addressing "whether this appeal should be dismissed, in part, for lack of a final judgment as to [Kelly] and [the law firm], because two counts of the operative complaint filed September 21, 2022 [counts one and two], remain pending against those defendants. See *Ahern* v. *Board of Education*, 219 Conn. App. 404, 418–19, [295 A. 3d 496] (2023); Practice Book §§ 61-3 and 61-4." On October 15, 2024, the plaintiff filed a memorandum opposing the partial dismissal of the appeal. The plaintiff argued that the portion of the appeal as to Kelly and the law firm should not be dismissed because "the factual and legal issues being relied upon for a resolution of the claims against . . . Griffith are intertwined with the factual

and legal issues presented against . . . Kelly and the law firm . . . ." The plaintiff relied, inter alia, on *Collins* v. *Anthem Health Plans, Inc.*, 266 Conn. 12, 30, 836 A.2d 1124 (2003) (this court concluded that it was unnecessary to address whether counts that were not brought pursuant to CUTPA were appealable because they were "inextricably intertwined" with appealable CUTPA counts). The defendants filed a memorandum supporting the partial dismissal of the appeal.

On October 30, 2024, this court dismissed the appeal to the extent it challenged the judgment rendered in favor of Kelly and the law firm on the non-CUTPA counts, namely, counts three, four, nine, ten, eleven and twelve, for lack of a final judgment. The motion to dismiss as to the judgment rendered in favor of Kelly and the law firm on counts five, six and eight was "denied without prejudice to the defendants addressing in their appellees' brief and the plaintiff addressing in its reply brief, if any, whether the judgment rendered on those counts is 'inextricably intertwined' with the judgment rendered on count seven for the purpose of appellate jurisdiction. See, e.g., *Collins* v. *Anthem Health Plans, Inc.*, [supra, 266 Conn. 30]."[5] Additional procedural history will be set forth as necessary.

I

Because the finality of the trial court's judgment implicates the jurisdiction of this court to hear the appeal, we first must consider whether the judgment rendered on counts five, six and eight is inextricably intertwined with the judgment rendered in favor of Griffith on count seven (CUTPA claim), which constitutes an appealable final judgment as to Griffith under Practice Book § 61-3.[6] For the reasons that follow, we conclude that the judgment rendered on counts five, six

---

[5] We note that the plaintiff did not file a reply brief with this court or any other filing further addressing this issue.

[6] Practice Book § 61-3 provides: "A judgment disposing of only a part of a complaint, counterclaim or cross complaint is a final judgment if that

and eight is inextricably intertwined with the judgment rendered on count seven. Accordingly, we conclude that we have jurisdiction to consider the appeal with respect to the claims that pertain to those counts.

We begin by setting forth the relevant legal principles relating to final judgments. "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary." (Internal quotation marks omitted.) *Glastonbury* v. *Sakon*, 172 Conn. App. 646, 651, 161 A.3d 657 (2017).

"Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim. . . . A judgment that disposes of only a part of a complaint is not a final judgment. . . . Our rules of practice, however, set forth certain circumstances under which a party may appeal from a judgment disposing of less than all of the counts of a complaint. Thus, a party may appeal if the partial judgment disposes of all causes of action against a particular party or parties . . . .

"If a party wishes to appeal from a partial judgment rendered against it, barring a limited exception . . . it

judgment disposes of all causes of action in that complaint, counterclaim or cross complaint brought by or against a particular party or parties.

"Such a judgment shall be a final judgment regardless of whether judgment was rendered on the granting of a motion to strike pursuant to Section 10-44, by dismissal pursuant to Section 10-30, by summary judgment pursuant to Section 17-44 or otherwise. The appeal from such judgment may be deferred (unless an objection is filed pursuant to Section 61-5) until the final judgment that disposes of the case for all purposes and as to all parties is rendered. If the appeal from such a judgment is to be deferred, a notice of intent to appeal must be filed in accordance with the provisions of Section 61-5.

"A party entitled to appeal under this section may appeal regardless of which party moved for the judgment to be made final."

can do so only if the remaining causes of action or claims for relief are withdrawn or unconditionally abandoned before the appeal is taken." (Citations omitted; internal quotation marks omitted.) *Ahern* v. *Board of Education*, supra, 219 Conn. App. 418.

There is, however, an exception to this finality rule. "[I]n some circumstances, the factual and legal issues raised by a legal argument, the appealability of which is doubtful, may be so 'inextricably intertwined' with another argument, the appealability of which is established that we should assume jurisdiction over both." *Clukey* v. *Sweeney*, 112 Conn. App. 534, 542, 963 A.2d 711 (2009); see also *Collins* v. *Anthem Health Plans, Inc.*, supra, 266 Conn. 29–30.

In its memorandum of law opposing the partial dismissal of the appeal, the plaintiff argued that "the factual and legal issues being relied upon for a resolution of the claims against . . . Griffith are intertwined with the factual and legal issues presented against . . . Kelly and the law firm . . . ." Specifically, the plaintiff argued that the legal sufficiency of the complaint sounding in CUTPA as against Griffith depends entirely on whether the plaintiff alleged valid CUTPA claims against Kelly and the law firm.

The defendants, however, argue in their appellate brief that, because the issue of whether Griffith's conduct is controlled by, or violated, CUTPA is not dependent on whether Kelly's conduct gives rise to a violation of CUTPA, the counts are not inextricably linked. Specifically, the defendants argue that the conduct that the plaintiff alleges within count seven—that Griffith acted in concert with and assisted Kelly—is not *solely* supported by the allegations in counts five, six, and eight but, rather, is also supported by the allegations in counts one and two. We agree with the plaintiff.[7]

---

[7] In their appellate brief, the defendants argue that our Supreme Court's discussion in *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 716–17 n.4, 183 A.3d 1164 (2018), reflects that the "inextricably intertwined" exception

In the present case, the trial court struck counts three through twelve of the plaintiff's complaint. Thereafter, the court rendered judgment on those counts in favor of the defendants pursuant to Practice Book § 10-44. That judgment, however, did not constitute an appealable final judgment with respect to Kelly and the law firm under Practice Book § 61-3 because it did not dispose of all causes of action asserted against them in the complaint. See, e.g., *Ahern* v. *Board of Education*, supra, 219 Conn. App. 421 (dismissing, for lack of final judgment, plaintiff's appeal from partial summary judgment rendered in favor of particular defendant because trial court had not disposed of all counts pertaining to that defendant). Specifically, count one, which asserts a legal malpractice claim against Kelly, and count two, which asserts a legal malpractice claim against the law firm, remain pending before the trial court. The trial court struck the only count asserted against Griffith (count seven) and, thereafter, rendered judgment in favor of Griffith on that count pursuant to Practice Book § 10-44. The judgment rendered on count seven in favor of Griffith constitutes an appealable final judgment under Practice Book § 61-3 because it disposed of all causes of action asserted against him in the complaint. The portion of the plaintiff's appeal challenging the judgment rendered in favor of Griffith on the stricken count seven is therefore jurisdictionally proper.

applies only when there is a final judgment as to all of the parties before the court. The defendants argue that, here, the judgment of the trial court on the motion to strike was final as to Griffith only. Although the court in *Meribear Productions, Inc.*, stated that it had relied on this exception "when there is a final judgment as to all of the parties before the reviewing court," it does not expressly limit the exception to such circumstances. Id., 716 n.4. Indeed, the court made clear that the exception may be invoked "when resolution of the interlocutory ruling would control or bear on the resolution of the final judgment or the case generally." Id., 717 n.4. Such is the situation here.

Counts five, six, seven and eight of the plaintiff's complaint allege CUTPA violations against Kelly, the law firm, and Griffith.

The allegations of count five which are directed against Kelly provide in relevant part:

"17. As it relates to the underlying civil matter involving an alleged violation of the appellate stay . . . Kelly communicated to [Gary] Thompson [the managing member of the plaintiff] that he was an expert in the field and continued to reassure and made guarantees to Thompson of the expected outcome of the case; and as a consequence, Thompson on behalf of the [plaintiff], believed that . . . Kelly had superior knowledge, skill and expertise with respect to prosecuting these types of proceedings involving a violation of the appellate stay.

"18. [Kelly] further assured Thompson that his firm could handle the volume when considering he was representing the plaintiff in another matter involving a violation of the appellate stay . . . as well as defending Thompson's interest in another entity . . . .

"19. [Kelly] informed the plaintiff through Thompson that his legal team including his partner . . . Griffith and others, had a competitive advantage in that they were able to provide expanded legal services to the plaintiff.

"20. These misrepresentations by . . . Kelly as to his skill sets relative to the expected outcome of the case, the amount of litigants in his firm and the statement relating to having a competitive advantage, were not the basis of an honest 'chest puffing' but instead were knowingly false representations made to induce Thompson, and the same did induce Thompson, to agree to have . . . Kelly represent the plaintiff.

"21. . . . Kelly's ulterior motive or sole purpose for the representation was entirely based on the entrepreneurial aspect of the practice of law and said representation was not pursued in the best interest of the plaintiff.

"22. The conduct of . . . Kelly as aforesaid, has been, and continues to be, unfair, deceptive, immoral, unscrupulous, offensive to public policy, harmful to consumers, and otherwise is within the scope of misconduct that CUTPA was enacted to prevent."

Count six alleges a CUTPA violation against the law firm and incorporates the allegations of count five. Count eight also alleges a violation of CUTPA against the law firm based on a theory of vicarious liability resulting from Griffith's employment with the firm and incorporates the allegations contained in paragraphs 17 through 22 of count five.

Count seven, which alleges that Griffith violated CUTPA, alleges the following relevant factual allegations:

"23. . . . Griffith . . . practices law as a member, partner, owner, agent, and/or employee of [the law firm] . . . .

"24. At all times relevant herein . . . Griffith as a licensed attorney was in the business of providing legal services to the general public in Connecticut.

"25. [Griffith] . . . knew about the fraudulent scheme perpetrated by . . . Kelly affecting the manner in which they obtain new clients and also assisted . . . Kelly in achieving the same.

"26. [Griffith] assisted . . . Kelly by providing legal advice as well as coverage for . . . Kelly's conflicting legal matters which encouraged and allowed . . . Kelly to dedicate the time needed to carry out and perfect the fraudulent scheme as aforesaid.

"27. . . . Griffith knew that . . . Kelly was using . . . Griffith's name to falsely advertise the size and capabilities of the [law] firm as a way to obtain business through deception.

"28. Despite having knowledge of this deceptive practice . . . Griffith took no affirmative action against such conduct but instead acquiesced and ratified the same.

"29. The conduct of . . . Griffith as aforesaid, has been, and continues to be, unfair deceptive, immoral, unscrupulous, offensive to public policy, harmful to consumers, and otherwise is within the scope of misconduct that CUTPA was enacted to prevent."

A review of the allegations in counts five, six, seven and eight demonstrates that the sufficiency of the CUTPA claims alleged against Kelly and the law firm, and the court's striking of those counts, are inextricably intertwined with the sufficiency of the claims alleged against Griffith in count seven and the court's striking of that count. The plaintiff relies on the same factual and legal basis for both the CUTPA claims against Griffith and the CUTPA claims against Kelly and the law firm. Because the plaintiff argues that the allegations contained in count seven against Griffith are sufficient to meet the requirements under CUTPA, the extent to which Griffith's conduct falls under CUTPA is dependent on whether Kelly's conduct gives rise to a violation of CUTPA. Specifically, in count seven, it is alleged that Griffith acted in concert with and assisted Kelly in a fraudulent scheme of misrepresentation for an impermissible entrepreneurial purpose in connection with the underlying civil matter. Count five sets forth specific factual allegations as to Kelly's role in the alleged fraudulent scheme of misrepresentation itself. Thus, if the trial court finds that the conduct of Kelly does not rise to the level of a CUTPA violation, then no liability could

attach to Griffith for acting in concert with and assisting Kelly. Similarly, count six alleges a CUTPA violation against the law firm and incorporates the allegations set forth in count five. Count eight of the complaint, which is based on a theory of vicarious liability, alleges a CUTPA violation against the law firm and incorporates the allegations set forth in count seven. As the issue of whether CUTPA liability attaches to the law firm and Griffith depends on whether the allegations against Kelly are sufficient to trigger liability under CUTPA, we conclude that the counts are inextricably intertwined. See *Collins* v. *Anthem Health Plans, Inc.*, supra, 266 Conn. 30 (concluding that CUTPA and non-CUTPA counts were "inextricably intertwined" where factual and legal bases of claims did not differ).

With respect to the defendants' argument that, because the allegations within count seven are represented in counts one and two, the extent to which Griffith's conduct violated CUPTA is *not* dependent on whether Kelly's conduct gives rise to a CUTPA violation, we are not persuaded. Count one alleges legal malpractice against Kelly and provides specific factual allegations as to Kelly's negligence and his breach of his duty of care during his representation of the plaintiff. Count one also alleges that Kelly concealed the negligent acts, misdeeds, malpractice, and omissions alleged therein. Count two, alleging legal malpractice against the law firm, incorporates the factual allegations of count one and alleges that Kelly's conduct is imputed to the law firm on a theory of vicarious liability. That there are overlapping factual allegations in counts one and two and counts five, six and eight does not affect our conclusion herein that count seven and counts five, six, and eight are inextricably intertwined.

In sum, we conclude that the judgment rendered by the court as to counts five, six, and eight are inextricably intertwined with the judgment rendered as to count

seven, constituting an appealable final judgment for which this court has jurisdiction.

## II

Having determined that this court has jurisdiction to hear this appeal, we next turn to the merits of the plaintiff's claim. The plaintiff claims that the court abused its discretion when it granted the defendants' motion to strike without affording the plaintiff an opportunity for oral argument. We disagree.

We begin by setting forth the standard of review and relevant legal principles. This claim challenges a trial court's decision to rule on a motion to strike without hearing oral argument. Unless a party is entitled to oral argument as a matter of right, such determination invokes the discretion of the trial court. See Practice Book § 11-18. Thus, it is reversible only for abuse of discretion. "In reviewing a claim of abuse of discretion, we have stated that [d]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . [Reversal is required only] [i]n those cases in which an abuse of discretion is manifest or where injustice appears to have been done . . . ." (Internal quotation marks omitted.) *Kelsey* v. *Commissioner of Correction*, 202 Conn. App. 21, 38, 244 A.3d 171 (2020), aff'd, 343 Conn. 424, 274 A.3d 85 (2022).

As stated previously in this opinion, on November 23, 2022, the defendants filed a motion to strike counts three through twelve of the plaintiff's complaint on the grounds that the allegations were insufficient as a matter of law. On January 5, 2023, after the thirty days

prescribed by Practice Book § 10-40 had expired, the plaintiff filed a motion for extension of time to respond to the defendants' motion to strike, "up to and including February 8, 2023." On January 17, 2023, the defendants filed an objection to the plaintiff's motion for extension of time. The trial court took no action on these two motions.

On March 9, 2023, the defendants marked the motion as "take papers," given that the plaintiff had not filed an objection. The motion was listed on the March 13, 2023 short calendar as "take papers." On March 13, 2023, the trial court granted the defendants' motion to strike and, in its order, stated that the motion was granted "[f]or the reasons set forth in the defendants' supporting memorandum of law." The trial court further noted that "[t]he plaintiff did not file an opposition memorandum." On that same day, for the first time, and beyond the thirty days prescribed by Practice Book § 10-40, the plaintiff filed an objection to the defendants' motion to strike along with a request for oral argument.[8]

Practice Book § 11-18 provides in relevant part: "(a) Oral argument is at the discretion of the judicial authority except as to . . . motions to strike . . . and/or hearing on any objections thereto. For those motions, oral argument shall be a matter of right, provided: (1) the motion has been marked ready in accordance with the procedure that appears on the short calendar on which the motion appears, or (2) a nonmoving party files and serves on all other parties . . . a written notice stating the party's intention to argue the motion or present testimony. *Such a notice shall be filed on or before the third day before the date of the short calendar date* . . . ." (Emphasis added.) "Thus, even

---

[8] This court notes that the plaintiff's filing of its objection and request for oral argument on March 13, 2023, is beyond the February 8, 2023 date requested in its motion for extension of time.

though . . . § 11-18 'grants . . . oral argument as of right, it is not automatic but must be claimed for argument as provided in [§ 11-18].' " *Curry* v. *Allan S. Goodman, Inc.*, 95 Conn. App. 147, 152, 895 A.2d 266 (2006).

In the present case, the record reflects that the defendants marked their motion to strike as "take papers," and it was not marked "ready." The defendants did not request oral argument on the motion to strike. Thus, for the plaintiff, as the nonmoving party, to be afforded argument as a matter of right, it was required to file "notice [stating its intent to argue the motion] . . . on or before the third day before the date of the short calendar date . . . ." See Practice Book § 11-18. Despite the clear language of § 11-18, the plaintiff failed to request oral argument three days before March 13, 2023, as required. Rather, the plaintiff filed its request for oral argument on the short calendar date of March 13, 2023. Indeed, the plaintiff concedes that the notice for oral argument "was not filed in accordance with the time frame set by [§] 11-18 (a) (2)." Thus, we conclude that the plaintiff was not entitled to oral argument as of right pursuant to § 11-18. Rather, whether to provide oral argument was within the discretion of the trial court. See Practice Book § 11-18.

Notwithstanding its concession that its filing was untimely, the plaintiff argues that strict adherence to the requirements under Practice Book § 11-18 (a) (2) "would serve a complete surprise and an injustice under the circumstances," and that "[s]etting the matter down for argument would not prejudice the defendants in any way given the fact that the case was set down for trial in April of 2025 and would not in any way disturb the scheduled trial. The plaintiff, however, did suffer prejudice in one or more . . . ways." In support of this argument, the plaintiff relies on Practice Book § 1-8, which provides: "The design of these rules being to facilitate business and advance justice, they will be

interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice."[9] The plaintiff fails, however, to demonstrate how the court's appropriate exercise of its discretion under Practice Book § 11-18, in not affording the plaintiff oral argument, resulted in "surprise or injustice." In its brief, the plaintiff contends that oral argument would have provided the opportunity for it to expand on arguments presented in its memorandum of law in support of its objection to the defendants' motion to strike. We point out again, that, in the court's March 13, 2023 order granting the motion to strike, it noted that "[t]he plaintiff did not file an opposition memorandum" and that the plaintiff's objection and supporting memorandum were filed on the same day, after the time for filing an objection to the motion to strike had expired. The plaintiff had every opportunity to timely file its objection to the motion to strike and to timely request oral argument on the motion; however, it failed to do so. Thus, the plaintiff's argument that the court's failure to afford the plaintiff oral argument denied it "the opportunity to be meaningfully heard on the record and to address any ambiguities flowing from the dispute between the parties to its detriment" is unavailing. (Emphasis omitted.) Moreover, this assertion does not identify any actual prejudice or injustice that flowed from the denial. Rather, the plaintiff appears to represent that oral argument would have been used to discuss

---

[9] The plaintiff additionally contends that "at no time did it waive its right for oral argument and, due to circumstances outside of counsel's control, the notice was not filed three days before the March 13, 2023 short calendar date." Specifically, the plaintiff relies on its representation in its motion to reconsider before the trial court that the plaintiff's counsel "had service problems, which delayed the filings." This argument warrants little discussion. We note that the trial court did not make any factual findings or legal conclusion concerning the plaintiff's "service problems." Thus, to the extent that the plaintiff relies on this bare assertion presently in its claim that the trial court abused its discretion by granting the defendants' motion to strike without affording the plaintiff an opportunity for oral argument, there simply is no basis in the record for this court to conclude as such.

arguments the plaintiff raised as part of its untimely objection to the motion to strike, which was not properly before the trial court. Thus, we are not persuaded that the trial court abused its discretion by adhering to our rules of practice.[10]

In sum, we agree with the defendants that the plaintiff's untimely motions practice before the trial court evidenced a clear disregard for Practice Book §§ 11-18 and 10-40. The plaintiff had the opportunity to pursue a timely objection to the defendants' motion to strike and to appropriately request oral argument under Practice Book § 11-18 (a) (2). Because no party appropriately requested oral argument on the motion to strike, the trial court properly ruled on the motion without oral argument, subsequent to the submission of the defendants' short calendar marking the motion as "take papers." Thus, we conclude that the plaintiff was not entitled to oral argument as a matter of right and, therefore, the trial court did not abuse its discretion by granting the defendants' motion to strike without affording the plaintiff an opportunity for oral argument.[11]

[10] Thus, even if we were to conclude that the court abused its discretion by granting the defendants' motion to strike without affording the plaintiff an opportunity for oral argument, which we do not, the plaintiff fails to establish that such denial was harmful. See *Bradley* v. *Yovino*, 218 Conn. App. 1, 15–16, 291 A.3d 133 (2023) ("[I]n order to establish reversible error in nonconstitutional claims, the [appellant] must prove both an abuse of discretion and harm . . . . The harmless error standard in a civil case is whether [an] improper ruling would likely affect the result. . . . In the absence of a showing that the [claimed error] would have affected the final result, its [error] is harmless." (Citation omitted; internal quotation marks omitted.)).

[11] The plaintiff also claims that the court abused its discretion in denying the plaintiff's motions to reconsider. In light of our conclusion herein that the court did not abuse its discretion in granting the defendants' motion to strike without affording the plaintiff an opportunity for oral argument, we also conclude that the court did not abuse its discretion by denying the plaintiff's motions for reconsideration. See *LendingHome Marketplace, LLC* v. *Traditions Oil Group, LLC*, 209 Conn. App. 862, 873, 269 A.3d 195 ("[b]ecause there was no error in the court's ruling, we also conclude that the court did not abuse its discretion in denying the defendant's motion to reargue/reconsider"), cert. denied, 343 Conn. 927, 281 A.3d 1187 (2022).

The judgment is affirmed with respect to the granting of the motion to strike counts five, six, seven and eight of the plaintiff's complaint.

In this opinion the other judges concurred.